# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 94-CA-00703-SCT

*PHYLLIS ROBERTS*

*v.*

*GRAFE AUTO COMPANY, INC., RENE CLARK AND
SHERRIE CLARK*

| | |
|---|---|
| DATE OF JUDGMENT: | DECEMBER 5, 1991 |
| TRIAL JUDGE: | HON. HONORABLE CLINTON LOCKARD |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | WAYNE E. FERRELL, JR. |
| | MARGARET P. ELLIS |
| ATTORNEYS FOR APPELLEES: | W. LEE WATT |
| | W. MARK EDWARDS |
| | JAMES N. COMPTON |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 6/26/97 |
| MOTION FOR REHEARING FILED: | 7/10/97 |
| MANDATE ISSUED: | 10/16/97 |

**BEFORE PRATHER, C.J., ROBERTS AND MILLS, JJ.**

**ROBERTS, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. This is an appeal from the Circuit Court of Jackson County, Mississippi, involving a one car accident on Interstate 10, east of the Mobile, Alabama. Phyllis Roberts was a passenger in a 1976 Plymouth Volare driven by Rene' Clark. Appellant Roberts filed suit against appellee's Grafe Auto Company, Inc., Rene' Clark, Sherrie Clark and Goodyear Rubber and Tire Co. Prior to trial, Roberts entered into a settlement agreement with Goodyear Tire and Rubber Co. Following the presentation of evidence, the jury returned a verdict for the remaining defendants. Some question arose as to whether Roberts timely filed an appeal. However, this Court in ***Roberts v. Grafe Auto Co., Inc.***, 653 So. 2d 250 (Miss. 1995), determined that Roberts' appeal was timely filed and reinstated the appellate procedure. Subsequently, the trial court denied Roberts' motion for judgment notwithstanding the verdict or, in the alternative, a motion for a new trial. Aggrieved by the disposition below, Roberts raises the following assignments of error:

**I. WHETHER THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION *IN LIMINE* PROHIBITING APPELLEE FROM MENTIONING APPELLANT'S PRETRIAL SETTLEMENT WITH FORMER DEFENDANT, GOODYEAR TIRE & RUBBER, INC., AND FURTHER, DENYING APPELLANT'S MOTION FOR MISTRIAL BASED UPON APPELLEE'S REFERENCES OF THE PRETRIAL SETTLEMENT IN FRONT OF THE JURY?**

**II. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN PERMITTING A POLICE OFFICER, NOT QUALIFIED AS AN EXPERT, TO GIVE OPINION TESTIMONY INVOLVING THE CAUSE OF THE ACCIDENT?**

**III. WHETHER THE TRIAL COURT ERRED IN ALLOWING INTO EVIDENCE TESTIMONY REGARDING THE APPELLANT'S FAILURE TO WEAR A SEATBELT?**

**IV. WHETHER THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT AND A NEW TRIAL ON DAMAGES ONLY OR, IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL?**

## STATEMENT OF THE FACTS

¶2. On June 6, 1986, Phyllis Roberts and Renee' Clark graduated from Moss Point High School. Roberts spent graduation night at Rene's home, but because of the excitement surrounding graduation and their planned vacation to Panama City, Florida, Roberts slept only two (2) hours and Rene' did not sleep. After meeting two other friends and a chaperon, Janis Broadus, a teacher at Moss point High School, the group left for Florida in three automobiles. The two friends were in the lead car, Rene' followed in her car, in which Roberts rode as a passenger and Janis Broadus followed in the third car. Roberts contends that Rene' became sleepy during the trip, because of Rene's lack of rest, and that Rene' began to steer the car in a swaying motion, as the girls sang, in an effort to pull Rene' out of her drowsy episode. Roberts stated while Rene' was driving the car in a swaying fashion, they heard a noise and soon after Rene' lost control of the car. Broadus testified she saw Rene's car swaying, and that after the car was significantly swaying she saw a black object fly up from underneath the car. One of the tires had lost its tread, but remained inflated. The car hit a retaining wall on a bridge and later came to rest. Mobile Police Officer Steve Bitowf was called to the accident scene to investigate the accident and file an accident report.

¶3. Roberts suffered a broken leg requiring a pin, developed fat embolism syndrome, hematosis, cuts, bruises and was hospitalized for eleven days. Roberts filed suit against appellee's Grafe Auto Company, Inc., Rene' Clark, Sherrie Clark and Goodyear Rubber and Tire Co. In 1983, Grafe Auto Co. sold the 1976 Plymouth Volare to Sherrie Clark, father of Rene'. At the time of the accident, Rene' had owned the Volare for approximately three (3) years. Rene' testified that Sherrie had taken responsibility for maintenance of the car's tires which were manufactured by Goodyear.

¶4. Approximately one week prior to trial, Roberts and Goodyear entered into a settlement agreement. Thereafter, Dr. Christopher Shapley, who had been retained as an expert witness for Goodyear, was retained by Roberts to serve as expert witness and testify as to the cause of the

accident and the loss of tire tread. On November 19, 1991, the trial began and lasted three days. Prior to the start of trial, Roberts' counsel, asked the trial judge to grant a motion *in limine* prohibiting the defendants from informing the jury of the settlement between Roberts and Goodyear. Defense counsel stated that the disclosure was necessary because it went to the heart of their defense. The trial court denied the motion and stated that he felt the defendants reason for the disclosure was legitimate.

¶5. During opening statement, the Clarks' attorney, James N. Compton stated:

> ...This chameleon case started as a case about a tire that was defective, a tire that was manufactured by Goodyear, a tire that was bad, and a suit that was based on the tire that was bad and was manufactured by Goodyear. And just in the last week it suddenly, it has changed now into the car seller's fault and the father of the driver's fault and the driver's fault and all these other things that have suddenly come about that have changed the direction of where this case was and where it was going.

Roberts' attorney immediately asked for a mistrial, which the trial court denied.

¶6. Further attention was drawn to Goodyear during cross-examination of Roberts, Compton asked whether she had signed the answers to interrogatories that "were propounded by the defendant Goodyear." During cross-examination of Dr. Shapley, Compton asked if he had previously been employed as an expert by Goodyear. And during closing argument, Compton stated:

> ...Because what happened is, eventually the colors of what happened started to change, as I told you about the chameleon in this thing. And what was an accident that the sole cause of was an equipment failure became an opportunity to re-create a money recovery on, to profit from. As I've often said that expert witnesses, if you've got enough money, you can hire someone from somewhere who will testify to just about everything...

> Then Dr. Shapley. But the amazing thing about Dr. Shapley is, is last Friday he was working for Goodyear and Goodyear's lawyer, and then he switched over and went from the party that being sued and started working for the lawyers that were suing the very party that he was working against before. And you've heard the term "hired guns," but I have never seen a gun that switched sides or switched holsters as fast as Dr. Shapley did so he could pick up that extra two or three days at twelve hundred and fifty dollars ($1,250) a day to come on down here.

¶7. Roberts contends the verdict must be reversed because defense counsel informed the jury that Roberts was not wearing a seat belt at the time of the accident. On cross-examination of Roberts, defense counsel asked, "As I understand, you did not have your seat belt on?" Roberts responded, "No, sir." Counsel for Roberts immediately objected, however, the trial court overruled the objection and instructed defense counsel to not mention the Roberts' non-use of the seat belt again. Thereafter, defense counsel followed the trial court's directive and did not mention the non-use of seat belt again.

¶8. At trial, defense counsel intended to question Officer Bitowf regarding the cause of the accident and the accident report he had prepared. Before Officer Bitowf was called as a witness, Roberts' counsel asked the police officer to be qualified as an expert, because Bitowf was anticipated to give an opinion regarding the tire and Bitowf had previously stated he did not think he is qualified as an

expert. The trial court responded, "I don't -- I'm just going to get the witness. I don't know what he's going to ask, or who he is."

¶9. Officer Bitowf was called to testify, he was a hazardous material investigator assigned to the traffic services unit of the Mobile Police Department. Bitowf testified he had been employed by the Mobile Police Department for eighteen (18) years. His job duties included hazardous material enforcement, working traffic accidents and traffic citations. Officer Bitowf testified he arrived and investigated the traffic accident involving Rene' Clark and Roberts. He stated he completed a routine accident report based upon "...the way I see the facts and the way it appears to me, information off of the vehicles, and weather conditions. Just a general, typical police report, down to the accuracy of what I saw happen." Approximately one hundred (100) yards behind the automobile Bitowf found a long strip of passenger car tire tread. Bitowf arrived on the scene before the ambulance and found the driver, Rene' Clark, and passenger, Roberts. Bitowf testified that on his accident report he indicated the automobile had collided with a retaining wall. Next, defense counsel asked Bitowf if he indicated on the accident report the prime contributing circumstances of the accident. Plaintiff's counsel objected and asked the trial court to allow voir dire of the witness before the jury was exposed to opinion testimony. The trial court sustained the objection and stated Bitowf could testify as to what he saw at the accident scene. Defense counsel again asked Officer Bitowf if he indicated on the accident report the prime contributing circumstance of the accident. Roberts' counsel again objected and was overruled by the trial court. Officer Bitowf then testified he had reported defective equipment as the prime contributing circumstance of the accident. Defense counsel then asked if Bitowf had found any other contributing circumstance of the accident. Again, Roberts' counsel objected. The trial court stated the objection was overruled because Officer Bitowf was merely testifying as a police officer filling in his report. Officer Bitowf then testified that he determined there were no other contributing circumstances causing the accident. Bitowf stated he did not observe any defects in Rene' Clark's character and that the only thing wrong with her was the injuries she sustained in the accident.

¶10. On cross-examination, Bitowf stated he was not and had never been qualified in a court of law as an accident reconstructionist. Further, Bitowf testified the only training he had ever received in the field of accident reconstruction was the initial training mandated by the state of Alabama for accident investigation in 1976. Bitowf stated he did not have any training in vehicle dynamics and that he did not want to be qualified as an expert. Bitowf stated he did not witness the accident. He stated he arrived several minutes after the accident and his testimony was based upon what he observed at the accident scene. Finally, Bitowf stated that although the tire had lost its tread, the tire remained inflated.

¶11. On redirect examination, Bitowf testified he had investigated accidents for eleven (11) years. Defense counsel asked Bitowf if he as a police officer with eleven years of accident investigation would be in a better position to evaluate the cause of the accident or the school teacher in the car traveling behind Rene' Clark's automobile. Roberts' attorney objected to the question, which was sustained by the trial court. Bitowf stated a person actually observing the accident would see the accident better than he could. Next, in an effort to compare plaintiff's expert witness and Officer Bitowf, defense counsel asked Bitowf if he would be in a better position to determine the cause of the accident, because he arrived immediately after the accident or a person residing in New Hampshire at the time of the accident. Roberts' counsel again objected. The trial court sustained the

objection as to comparing with other witnesses. Defense counsel asked Bitowf if he signed the completed accident report and if the report reflected his best knowledge, opinion and belief covering the accident. Bitowf responded affirmatively.

¶12. The jury was excused following Bitowf's testimony. Whereupon Roberts' counsel renewed the motion for mistrial, or in the alternative, asked that Bitowf's testimony be stricken from the record, because he was not an expert and there was no basis for his opinion; both motions were overruled.

¶13. On November, 21, 1991, the jury returned verdicts in favor of the defendants. However, the judgment was not entered until December 5, 1991.

## DISCUSSION OF THE ISSUES

**I. WHETHER THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION *IN LIMINE* PROHIBITING APPELLEE FROM MENTIONING APPELLANT'S PRETRIAL SETTLEMENT WITH FORMER DEFENDANT, GOODYEAR TIRE & RUBBER, INC., AND FURTHER, DENYING APPELLANT'S MOTION FOR MISTRIAL BASED UPON APPELLEE'S REFERENCES OF THE PRETRIAL SETTLEMENT IN FRONT OF THE JURY?**

¶14. Prior to the start of trial, Roberts submitted a motion *in limine* to prohibit any reference to the settlement agreement between Roberts and Goodyear. Roberts asked the trial court to merely deduct the amount of the settlement with Goodyear from the jury verdict at the end of the case. Roberts contends that disclosing that she had settled with one of the defendants without disclosing the amount would allow the jury to wonder and speculate regarding the settlement amount and further wonder if Roberts was attempting to receive a windfall from the litigation. The trial court allowed defense counsel to mention the settlement between Roberts and Goodyear to the jury. Defense counsel drew attention to the settlement several times during the trial.

¶15. The Mississippi Supreme Court has announced two acceptable procedures to be used to determine the damages due a plaintiff where co-defendants are involved and one co-defendant has settled with the plaintiff. The preferable method allows the parties to stipulate, outside of the presence of the jury, that a settlement has been made by one or more of the defendants and the amount of the settlement. *Garcia v. Coast Electric Power Association*, 493 So. 2d 380, 385 (Miss. 1986). The jury would not be informed of the settlement or the payment, and, if a verdict were returned for the plaintiff, the trial judge would reduce the amount awarded by the jury by the amount of the settlement by the other defendant or defendants. *Id.*

¶16. The second accepted procedure allows the jury to be informed of the existence of a settlement but not the amount of settlement (if settlement occurs after trial begins then it will be necessary to inform the jury why the defendants are no longer present). *Whittley v. City of Meridian*, 530 So. 2d 1341, 1346 (Miss. 1988). If the jury returns a judgment in excess of the settlement the judge can simply adjust the judgment by the amount of the settlement. *Id.*

¶17. Pursuant to Mississippi case law, the trial judge followed an acceptable procedure and therefore did not err in denying Roberts' motion *in limine*.

## II. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN PERMITTING A POLICE OFFICER, NOT QUALIFIED AS AN EXPERT, TO GIVE OPINION TESTIMONY INVOLVING THE CAUSE OF THE ACCIDENT?

¶18. The admission of expert testimony is addressed to the sound discretion of the trial judge. Unless we conclude that the discretion was arbitrary and clearly erroneous, amounting to an abuse of discretion, that decision will stand. *Seal v. Miller,* 605 So. 2d 240, 243 (Miss. 1992); *Hooten v. State*, 492 So. 2d 948, 950-51 (Miss. 1986).

¶19. Roberts contends the trial court committed error by allowing Officer Steve Bitowf, over objection, to give expert testimony, as a lay witness, concerning the cause of the accident. Rule 701 of the Mississippi Rules of evidence states:

> If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to the clear understanding of his testimony or the determination of a fact in issue.

¶20. This Court, in accordance with Rule 701 and the comment thereto, has limited lay witness opinion testimony to those opinions or inferences which are rationally based on the perception of the witness and helpful to the clear understanding of his testimony or the determination of a fact in issue. *See Couch v. City of D'Iberville*, 656 So. 2d 146, 153 (Miss. 1995); *Sample v. State*, 643 So .2d 524, 529-30 (Miss. 1994) (if the witness must possess some experience or expertise beyond that of the average, randomly selected adult, it is a Rule 702 opinion and not a Rule 701 opinion); *Mississippi State Highway Commission v. Gilich*, 609 So. 2d 367, 377 (Miss. 1992) (lay opinions are those which require no specialized knowledge however attained); *Seal v. Miller*, 605 So. 2d at 244 (question calling on a police officer to respond based on experience as an officer investigating accidents is by definition not a lay opinion); *Wells v. State*, 604 So. 2d 271, 279 (Miss. 1992) ("If particular knowledge ... is necessary to assist the trier of fact ... then such testimony would never qualify as a lay witness opinion under M.R.E. 701"); *M & M Pipe & Pres. Vessel Fab. v. Roberts*, 531 So. 2d 615 (Miss. 1988) (where this Court, in the discussion of the admissibility of a police officer's testimony as a lay opinion, determined that an opinion could be given as to a contributing factor, such as broken brake lights). Stated differently, if a trial court must delve into a witness' background to determine if he possesses the necessary education, experience, knowledge or training in a specific field in order for the witness to testify as to his opinions concerning that particular field, then M.R.E. 702 applies. *Hardy v. Brantley*, 471 So. 2d 358, 366 (Miss. 1985).

¶21. It is well-entrenched in Mississippi law that a qualified expert's opinion testimony regarding accident reconstruction may be admissible. *See Hollingsworth v. Bovaird*, 465 So. 2d 311, 314-15 (Miss. 1985). Further, it is clear that a police officer's testimony as to the cause of the accident, based on training, experience in investigation, etc., would be considered accident reconstruction testimony, allowable as expert testimony under Rule 702, *if the officer is properly qualified. Id*. at 314-15. *See Miller v. Stiglet, Inc.*, 523 So. 2d 55 (Miss. 1988); *see also* M.R.E. 702 (providing that a witness may be qualified as an expert by knowledge, skill, experience, training or education).

¶22. In the case *sub judice* the issue to be determined is would an average, randomly selected adult be able to determine that the only contributing factor in causing the accident was a defective tire. If

any specialized knowledge, however obtained, is needed to express an opinion, the testimony is that of an expert, therefore Rule 702 applies. Defense counsel chose not to tender Bitowf as an expert and then proceeded to question Officer Bitowf as to the primary contributing factor to the accident and later to any other contributing factors. The trial court allowed the witness to answer both questions over repeated objections. Officer Bitowf testified that the only factor contributing to the accident was "defective equipment", meaning the tire.

¶23. Defense counsel questioned Bitowf as to his work experience in investigating automobile accidents for many years. Bitowf stated he did not have any specialized training, education or skill in accident reconstruction, and he stated he did not want to be an expert in the field of accident reconstruction. Defense counsel did not ask that Officer Bitowf be recognized as an expert in the field of accident reconstruction, in fact Bitowf stated he did not want to be tendered as an expert in accident reconstruction.

¶24. Notwithstanding the characterization of the Officer Bitowf as a "lay witness" at trial, the opinion which the defendants attempted to solicit was an expert opinion based on training and experience as a law enforcement officer and experience in the investigation of accidents and physical findings at the scene of the accident. Bitowf's testimony was not based upon actually witnessing the accident, rather it was based on his investigation afterward. The average, randomly selected adult could not conclude from examining the accident site that the defective tire was the only factor contributing to the accident.

¶25. In following many years of Mississippi case law we find that the trial court committed reversible error in allowing Officer Bitowf give expert testify without first being tendered an accepted as an expert witness in accident reconstruction. Because the public hold police officers in great trust, the potential harm to the objecting party requires reversal where a police officer gives expert testimony without first being qualified as such. Bitowf was not tendered as an expert, further he stated he was not an expert in accident reconstruction. However, defense counsel relied on Bitowf's experience in accident investigation to present Bitowf's testimony as that of an expert. In effect, Bitowf's testimony instructed the jury that driver error did not contribute to the accident, the very issue to be determined at trial. The function of the jury as factfinder must not be usurped. Because of this error, this case must be reversed and remanded for a new trial. On remand, the defendants may list Officer Bitowf as an expert witness and proffer their testimony as such. In light of M.R.E. 701 and M.R.E. 702, and the authorities cited herein, the trial judge, at that time, may allow the testimony of the officer as expert testimony if he is properly qualified and tendered as such.

### III. WHETHER THE TRIAL COURT ERRED IN ALLOWING INTO EVIDENCE TESTIMONY REGARDING THE APPELLANT'S FAILURE TO WEAR A SEATBELT?

¶26. Roberts contends the trial court committed error by allowing defense counsel to ask if Roberts was wearing a seat belt at the time of accident. Although this question was asked only once, during cross-examination of Roberts, and not spotlighted in opening or closing statement, Roberts argues the question was impermissible and constitutes reversible error. Miss. Code Ann. § 63-2-3 states:

> This chapter shall not be construed to create a duty, standard of care, right or liability between the operator and passenger of any passenger motor vehicle which is not recognized under the

laws of the State of Mississippi as such laws exist on the date of passage of this chapter or as such laws may at any time thereafter be constituted by state or court decision. Failure to provide and use a seat belt restraint device or system shall not be considered contributory or comparative negligence, nor shall the violation be entered on the driving record of any individual.

¶27. Clearly, the statute directs that evidence of the non-use of a seat belt shall not be presented to the jury. Although, defense counsel did not repeatedly argue this point, the question was asked and answered, thereby tainting the jury's mind that Robert's contributed to her injuries by not wearing a seat belt. As discussed earlier, this case is reversed and remanded for a new trial. On remand, no statement, argument or evidence is to be presented to the jury regarding the non-use of the seat belt.

## CONCLUSION

¶28. This case must be reversed for the error of allowing Officer Bitowf to give opinion testimony as to the "primary" cause of the accident. This determination is to be made by the jury. Although defense counsel offered the testimony as lay opinion, the testimony was in fact expert testimony. Officer Bitowf was neither qualified nor willing to be an expert witness in accident reconstruction. Upon remand the trial judge is instructed not to allow this expert testimony unless Officer Bitowf is first properly qualified as an expert. Finally, no evidence, statement or testimony of Roberts' non-use of the seat belt shall be given to the jury.

¶29. Based on the foregoing, the judgment of the lower court is reversed and the case is remanded to the Jackson County Circuit Court for additional proceedings not inconsistent with this opinion.

¶30. **REVERSED AND REMANDED.**

**PRATHER, P.J., PITTMAN AND SMITH, JJ., CONCUR. LEE, C.J., AND MILLS, J., CONCUR IN RESULT ONLY. BANKS, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J. McRAE, J., NOT PARTICIPATING.**

**BANKS, JUSTICE, CONCURRING:**

¶31. I agree with the disposition of this case but I disagree with what is written on Point I, and I fear that this litigation will be affected on remand.

¶32. I disagree with the assertion that *Whittley* "approved" a procedure of informing the jury that there has been a settlement where the amount is not disclosed. *Whittley v. City of Meridian*, 530 So. 2d 1341(Miss. 1988). *Garcia* spoke of two acceptable methods. *Garcia v. Coast Electric Power Association*, 493 So. 2d 380 (Miss. 1986). What *Whittley* did was disapprove the previously "acceptable" procedure wherein the jury was informed of the settlement and the amount. *Whittley* focused its discussion on the harm flowing from disclosing the amount. There is a similar harm, however, flowing from disclosing the fact of settlement because it leads the jury to speculate as to the amount. I don't read *Whittley* to retain two acceptable methods, modifying one of them. As I read *Whittley* it leaves but one "preferred" and "approved" method of handling settlements with less than all of the parties. That is to handle the entire matter outside of the jury's presence. I would direct the

trial court to handle the question of settlement in that manner.

**SULLIVAN, P.J., JOINS THIS OPINION.**