# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI

### NO. 1998-CA-01236-COA

**MICHAEL WATKINS, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF TAMELA KAY WATKINS, DECEASED; AND AS FATHER AND NEXT FRIEND OF JESSICA WATKINS AND MICHELLE WATKINS, MINORS; MATTHEW D. WATKINS, JR., AS THE ADMINISTRATOR OF THE ESTATE OF MATTHEW D. WATKINS, SR.; AND RONALD S. BUTCHER**  APPELLANTS

**v.**

**U-HAUL INTERNATIONAL, INC. AND JAMES R. DYKES, INDIVIDUALLY AND D/B/A JAMES R. DYKES**  APPELLEES

| | |
|---|---|
| DATE OF JUDGMENT: | 03/09/1998 |
| TRIAL JUDGE: | HON. W. SWAN YERGER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | T. JACKSON LYONS |
| | WILLIAM B. GILL III |
| ATTORNEYS FOR APPELLEES: | FRED KRUTZ III |
| | WALTER H. BOONE |
| | DAVID HARRISON FULCHER |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| TRIAL COURT DISPOSITION: | U-HAUL INC.'S MOTION FOR DIRECTED VERDICT GRANTED. JURY VERDICT FOR OTHER DEFENDANTS. |
| DISPOSITION: | AFFIRMED - 04/18/2000 |
| MOTION FOR REHEARING FILED: | 5/16/2000; denied 7/18/2000 |
| CERTIORARI FILED: | 8/16/2000; denied 11/2/2000 |
| MANDATE ISSUED: | 11/27/2000 |

BEFORE SOUTHWICK, P.J., LEE, AND MOORE, JJ.

LEE, J., FOR THE COURT:

¶1. Michael Watkins, Matthew (Mac) Watkins, and Ron Butcher filed complaints against U-haul International, Inc. and James W. Dykes, individually, and d/b/a James R. Dykes. Eventually, these complaints were consolidated with the case styled Michael Watkins, Individually And As Administrator Of The Estate Of Tamela Kay Watkins, Deceased; And As Father And Next Friend Of Jessica Watkins And Michelle Watkins, Minors v. U-haul International, Inc. and James W. Dykes, Individually and d/b/a James

R. Dykes. The cause of action originated from personal injuries and the wrongful death of Tamela Kay Watkins, Michael Watkins's wife, as a result of an automobile accident involving a Toyota truck and an attached U-haul tow dolly carrying a Ford Taurus.

¶2. The trial judge entered a directed verdict which dismissed U-Haul International, Inc. from the case at bar; however, a trial proceeded against Dykes. At the conclusion of the trial, the jury reached a verdict in favor of Dykes, fully denying any compensation to Michael Watkins, Mac Watkins, or Ron Butcher. Watkins asserts that he is entitled to a new trial because the trial judge abused its discretion in not allowing the testimony of their expert witnesses. More specifically, Watkins argues the following issue as error: whether the trial court abused its discretion by ruling that Richard Forbes, Ph.D., P.E., a professor of mechanical engineering, and Mr. Albert Medina, accident reconstructionist, could not testify. Finding this issue to be without merit, we affirm the decision of the lower court.

## FACTS

¶3. In the case at bar, the death of Tamela Kay Watkins occurred as a result of an automobile accident involving a Toyota truck which was pulling a Ford Taurus being transported on a tow dolly. In addition to Tamela's death, other passengers in the vehicle suffered personal injuries.

¶4. On July 28, 1993, Michael Watkins and Ron Butcher were returning from Louisiana after having performed their work obligations on an oil drilling platform. Michael Watkins and Butcher were driving home in the aforementioned Ford Taurus. While driving home the Taurus suffered from mechanical problems and eventually ceased to be operational. Since Watkins could no longer drive the Taurus, he called his wife, Tamela, for assistance.

¶5. Tamela obtained Mac Watkins to travel with her to retrieve Michael Watkins, Butcher, and the Taurus. Tamela and Mac first went to U-haul and rented a U-haul tow dolly from Dykes, a U-haul dealer, so that she could bring her husband, Michael Watkins, as well as Butcher, and the Taurus home. At the time of the rental of the tow dolly, Dykes installed a hitch ball provided by Mac Watkins on the Toyota truck and attached the tow dolly with the knowledge that the dolly would carry the Taurus. Dykes performed this hook-up even though the U-haul manuals advised against it since there was a not a 750 pound weight differential. Mac Watkins and Tamela proceeded to Louisiana.

¶6. Once Mac Watkins and Tamela arrived at the location of the Taurus, Michael Watkins loaded the Taurus on the tow dolly and began an examination of the Taurus on the tow dolly and the tow dolly's connection to the truck, to make sure everything was properly loaded and attached. Michael Watkins testified that it was at this time that Mac Watkins told him to examine the hitch ball. Additionally, Watkins testified that there appeared to be only three or four threads of the nut holding onto the shank of the hitch ball, and you could stick your finger inside the nut because the shank did not come all the way through. Michael Watkins got a pipe wrench from Mac Watkins and used it to try and tighten the nut; however, the ball turned inside the coupler and would not tighten. After the examination performed by Michael Watkins, Tamela, Mac Watkins, Michael Watkins, and Butcher commenced their journey home; however, before they could reach their destination, while driving on I-55, Mac Watkins, the driver, lost control of the Toyota truck.

¶7. After the accident, both Watkins and Dykes had expert witnesses survey the accident scene and view such items as the Toyota, Taurus, the Toyota's bumper, the hitch ball, and the tow dolly which were

involved in the accident. The main dispute among the experts was whether the accident was caused due to a weight differential problem and whether the nut disengaged and the hitch ball came out of the bumper on I-55 causing the accident, or whether the accident was caused due to driver error and the hitch ball became separated during a roll-over in the median. There was also some debate on whether Michael and Tamela Watkins were riding in the Taurus instead of the Toyota at the time of the accident. It is two of the expert witnesses's testimony that is the subject of this appeal.

¶8. Dykes filed a *motion in limine* to exclude Watkins's experts, Richard Forbes, a mechanical engineer, and Albert Medina, an accident reconstructionist, based on lack of qualification and insufficient knowledge of the facts of the case. The trial judge excluded the testimony of both Forbes and Medina. Additional facts will be discussed in the body of the opinion as needed.

## DISCUSSION

### I. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION BY RULING THAT RICHARD FORBES, PH.D., P.E., A PROFESSOR OF MECHANICAL ENGINEERING, AND MR. ALBERT MEDINA, ACCIDENT RECONSTRUCTIONIST COULD NOT TESTIFY.

¶9. Watkins argues that the circuit court erred and abused its discretion when it ruled that Richard Forbes, Ph.D., P.E., a professor of mechanical engineering, could not testify because he was not an accident reconstructionist, metallurgist, or control and stability expert, and because he had not conducted tests to determine how much force would be required to separate the hitch ball from the mini-pickup's bumper. Additionally, Watkins contends that the trial court further abused its discretion by excluding the testimony of Mr. Albert Medina, the accident reconstructionist, because Medina did not have appropriate educational or professional qualifications, or experience in the specific area of control and stability of towing vehicles, or knowledge of the facts of the case. The trial judge is vested with the sound discretion to determine whether expert testimony is admissible. *Roberts v. Grafe Auto Co., Inc.*, 701 So. 2d 1093, 1098 (Miss. 1997). Only if this Court determines that the discretion was applied in an arbitrary or clearly erroneous manner, amounting to an abuse of discretion, will we reverse the decision. *Id*. The guidelines for the admission of expert testimony are enumerated in Mississippi Rule of Evidence Rule 702.

¶10. There are two prongs that must be met under Rule 702 before expert testimony is admissible at trial. One prong requires that the witness be qualified as an expert. In other words, he is an expert and may testify in the form of an opinion or otherwise because of the knowledge, skill, experience, training, or education he holds. The second prong requires that the evidence be scientific, technical, or otherwise cover an area of specialized knowledge which will assist the trier of fact, in this case, the jury, to understand or decide a fact in issue. *See also Taylor v. State*, 672 So. 2d 1246, 1257 (Miss. 1996). In the comment to Mississippi Rule of Evidence Rule 702, it is noted that Rule 702 does not relax the standard that the expert must indeed be qualified to speak an opinion on a matter within his alleged field of knowledge. Additionally, the comment cites *Frye v. U.S.*, 293 Fed. 1013, 1014 (1923), for the fact that the scientific principle from which the expert's opinion is developed "must be sufficiently established to have gained general acceptance in the particular field to which it belongs."

¶11. In the case of *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579, 587 (1993), the United States Supreme Court held that the Federal Rule of Evidence Rule 702 superseded the former *Frye* "general acceptance" test. This law is not applicable to the Mississippi Rule of Evidence Rule 702. *Gleeton v.*

*State*, 716 So. 2d 1083, 1087 (Miss. 1998). Indeed, Mississippi still adheres to the more rigid "general acceptance" test enumerated in *Frye* as noted in the comment to Rule 702. However, the Supreme Court in *Daubert* acknowledged that even though *Frye* was superseded by the Federal Rules of Evidence, the trial judge still had the authority to review alleged scientific evidence and determine whether it is admissible. *Id*. at 589. This obligation was referred to in a footnote in the case as the trial judge's "gatekeeping responsibility." *Id*. We believe that under the guidelines of the Mississippi Rule of Evidence Rule 702, the trial judge serves as a "gatekeeper" in ruling on the admissibility of expert testimony. The Supreme Court of Mississippi has advised that "[t]he facts upon which the expert bases his opinion or conclusion must permit reasonably accurate conclusions as distinguished from mere guess or conjecture." *Hickox v. Holleman*, 502 So. 2d 626, 638 (Miss. 1987) *(quoting *Kruszewski v. Holz*, 290 A.2d 534, 540 (Md. 1972)).

¶12. With all this in mind, we will first address the exclusion of the testimony of Forbes. Forbes was offered by Watkins as an expert in the field of mechanical engineering and not as an accident reconstructionist, metallurgist, machine design, or expert on control stability of the tow dolly combination. By Forbes's own admissions in his depositions, he was not qualified as an expert in these areas. The trial court relied on Forbes's lack of expertise in the aforementioned areas, along with his failure to conduct tests or studies to determine the amount of force necessary to vertically separate the hitch ball from the bumper and the vertical force present in normal highway conditions as the basis for disqualifying him to testify as an expert regarding the cause of the accident. When we examine Forbes's depositions and his trial testimony, the decision of admissibility of his opinions hinge not entirely on whether any testing performed to reach his results was generally acceptable to reach that opinion, but a lack of testing, as well as whether his testimony was necessary to assist the trier of fact. Indeed, outside the realm of testimony regarding the cause of the accident, if Watkins had offered testimony from Forbes that was necessary to assist the trier of fact, Forbes would have been allowed to testify.

¶13. Originally, in Watkins's answers to interrogatories, Watkins asserted that Forbes would testify to the fact that the shank of the hitch ball was of insufficient length and that due to the length of the shaft, the nut would not have been properly engaged on the shank. Additionally, Forbes was expected to testify that the damage done to the threads on the shank resulted from an impact, and that the bend in the hitch ball was caused by a force applied after the nut came off and the ball came out of the bumper. Furthermore, Forbes was anticipated to testify that due to an inspection of the Taurus, the windows were raised at the time of the subject accident. Forbes was also being offered to testify that the Taurus lacked a braking mechanism, and that if a braking mechanism had been present on the U-haul tow dolly it would have prevented the accident. Watkins also contended that Forbes would testify about the insufficient weight differential between the Toyota and the Taurus. Finally, Forbes was going to testify that the proper way to install a hitch-ball was to use a lockwasher and have the threads extending past the nut, and that persons not trained in proper installation increases the risk of injury. A need to present a majority of Forbes's testimony which was enumerated in the aforementioned interrogatory responses was eliminated due to stipulations or the fact that it was common knowledge and would not assist the trier of fact.

¶14. Forbes was excluded from testifying that the tow dolly on which the Taurus was being pulled lacked a braking mechanism, and if a braking mechanism had been in place it would have prevented the subject accident. Ultimately, at trial, Watkins did not question Forbes about the lack of braking mechanisms on the tow dolly. This testimony would have gone to the cause of the accident and such testimony had previously been excluded by an order of the trial court, due to Forbes admission that he could not reconstruct the accident since he was not an accident reconstructionist. Furthermore, Forbes testified at his deposition that

he was not an expert in machine design. The Court finds no error in the exclusion of this testimony.

¶15. The need to have Forbes testify about the weight differential between the Toyota and the Taurus became of no assistance to the trier of fact. This is because in the beginning of the trial, the trial judge read a stipulation which acknowledged that the 1998 (sic) U-haul User's Guide stated that mini-pickups (i.e., the Toyota pickup) were not to pull a tow dolly. Additionally, both the 1998 (sic) and 1993 User's Guide stated the tow vehicle must be 750 pounds heavier than the towed vehicle. The stipulation went on to say the curb weight of the Toyota in this case was 3,000 pounds, and the curb weight of the Taurus was 2,900 pounds. Therefore, Dykes was negligent in attaching the tow dolly to the Toyota. However, Dykes denied this was the cause of the accident. This stipulation eliminated the necessity of Forbes testifying to the weight differential. Not only did the stipulation eliminate the need for testimony, but in Forbes's deposition he admitted that outside of the statements relative to weight differentials contained within the U-haul materials, he had no independent knowledge due to lack of testing, and would assume that the weights listed in the U-haul guide and handbook were correct.

¶16. Next, Watkins wished to have Forbes testify that the damage done to the threads on the shank resulted from an impact, and that the bend in the hitch ball was caused by a force applied after the nut came off and the ball came out of the bumper. However, Forbes admitted that he was not a metallurgist and had not consulted a metallurgist in reaching this opinion, and had no idea what the hitch ball had come in contact with to bend the shaft.

¶17. Furthermore, Forbes was going to testify that the windows on the Ford Taurus were in a raised position. During the direct examination of Forbes, this question was withdrawn in response to Dykes's assertion that a written stipulation which asserted that the windows of the Taurus were up had been sent to Watkins. Therefore, testimony on this issue became moot.

¶18. Ultimately, Watkins only proffered Forbes to testify that a nut should be fully engaged on a bolt. Forbes stated that this was common knowledge among not only engineers, but even the lay persons on the jury should recognize this premise. Since Forbes testified that this was common knowledge, the trial court excluded the evidence. Furthermore, it had been stated by Dykes in opening statement that a full thread engagement would have been seven and one-half threads instead of four which actually appeared to have been engaged by the nut in this case. We determine for all the aforementioned reasons that the trial court did not abuse its discretion in excluding the testimony of Forbes. We must now determine whether the lower court properly excluded the testimony of Medina.

¶19. Prior to trial Dykes filed a *motion in limine* to exclude the testimony of Medina. The trial court entered an order which acknowledged that Medina was an expert in accident reconstruction and reserved ruling until trial on whether his testimony would be admissible. At trial, counsel for Dykes conducted a *voir dire* of Medina. At the conclusion of the *voir dire*, the trial judge excluded the testimony of Medina. The trial court based this ruling on the time Mr. Medina arrived at the accident scene and the fact that the scene was washed away, the evidence was gone; therefore, Medina would have insufficient evidence or facts to base an opinion, and that in certain instances he was not qualified by training, education, or experience, and lacked the specialized knowledge to render an opinion. Additionally, the trial court determined that under Mississippi Rule of Evidence Rule 403 that even if it were admissible it would be unfairly prejudicial.

¶20. Watkins proffered that Medina would be offered to testify about the weight differential between the Taurus and the Toyota, and that the hook-up between the two created a dangerous situation and should not

have occurred between the Toyota and the tow dolly with the Taurus. Additionally, he would testify that the hitch ball shank on the subject hitch ball was of insufficient length to be properly attached to the bumper of the Toyota truck. Furthermore, he would testify that the nut coming off the hitch ball while the vehicles were in motion caused the vehicles to loose control and turn over and there was no evidence on the part of Mac Watkins of improper driving prior to the hitch ball becoming detached as a source of the accident. Medina would also testify that it was impossible for the Watkinses to have been riding in the Taurus while it was being towed based on evidence at the scene. Finally, Medina would testify that skid marks and debris that were present in the median of I-55 approximately 100 yards south of the accident scene are not related to the subject accident.

¶21. When Medina was questioned by Watkins relative to whether he was going to reconstruct the accident, Medina admitted that he did not have complete information to reconstruct the accident due to the lack of information remaining at the accident scene at the time of his inspection. He testified he could make some opinions; however, there was no testimony in the actual examination of Medina which elaborated on exactly what opinions he felt he could give based on his knowledge and expertise to assist the trier of fact. During *voir dire* Medina admitted that he was not a registered professional engineer, was not an expert on design, fasteners (i.e., nuts and bolts), or control stability on tow dolly combinations, and was not a metallurgist. Further, Medina acknowledged that he did not know how many threads it would take to serve the intended purpose of the nut on the bolt, and only used common sense to determine that it should be fully engaged. Medina also admitted that he did not believe he was the appropriate person to perform pull tests on the bumper, hitch ball and nut to determine how much force it would take to pull the nut off. It is also noted that Median had only made a rough draft of the accident scene, not one which was to scale that precisely depicted what information might have remained at the scene.

¶22. In Medina's deposition he admitted that he had no opinion as to whether Tamela and Michael Watkins were located in the Taurus or the Toyota at the time of the accident. Medina went on to explain that he did not know for a fact that they were in the Toyota, but it was his understanding that they were all in the truck and nothing he had seen indicated otherwise. Therefore, it becomes evident that he had no specialized knowledge that would have assisted the trier of fact on this issue.

¶23. Just as was the case with Forbes, Medina had no independent knowledge from lack of expertise and testing, and due to an inability to reconstruct the accident scene that the weight differential between the vehicles was the cause of the accident. Additionally, he was not offered by Watkins as an expert in control stability. Medina, like Forbes, relied on the U-haul manuals; therefore, this information was appropriately excluded. The evidence relative to the weight differentials was contained in the U-haul books and also contained in a stipulation; therefore, due to all of the aforementioned reasons, simply restating the U-haul guidelines would have given no additional information to assist the trier of fact. While it appears that both Forbes and Medina felt they could render a general opinion regarding the effect of an insufficient weight differential between a towing and towed vehicle, it also appears that neither expert had sufficient knowledge of the facts of this case to espouse that it was the cause of the accident in the case at bar.

¶24. Testimony regarding whether the hitch ball shank was of insufficient length to be properly attached to the bumper of the Toyota and the nut coming off the hitch ball while the vehicles were in motion causing the accident was also properly excluded, since Medina lacked the training, education and experience, or specialized knowledge of the particular facts to make this determination. During *voir dire* Medina admitted that he was not an expert on fasteners. Additionally, Medina stated he had performed no tests to determine

how many threads would have to be engaged for the nut to stay attached, or how much force it would take to pull a hitch ball through a nut. Furthermore, he testified that he was only using common sense in determining that a full size nut should be threaded all the way.

¶25. The trial judge excluded the testimony relative to the skid marks and blue debris because Medina had insufficient evidence or facts to base that opinion, and the trial judge was not aware of any factual basis Medina would have to render regarding the presence of blue debris at the accident scene; therefore, it was not admissible. In Medina's deposition testimony, he further supported the trial judge's ruling when he testified that he could not say the skid marks and blue debris were part of the subject accident. In fact, he stated that the blue debris probably was not part of the accident because none of the vehicles involved in the accident had blue parts. Medina further elaborated by saying that he had generally made a note of the presence of the debris just as an observation of what he viewed while he was surveying the accident scene. We do not find that the trial judge abused his discretion in excluding this evidence.

¶26. Additionally, there was no abuse of discretion in excluding Medina's testimony relative to whether Mac Watkins had performed improper driving prior to the hitch ball detachment. Medina testified at his deposition that he had not spoken with witnesses of the accident. This included Mac Watkins. Additionally, he was unable to obtain any information which supported this assertion from the accident scene or a visual inspection of the cars or tow dolly. Based on the above discussion of Medina's proffered testimony, this Court determines that the trial court did not err in excluding the expert testimony of Medina in its entirety.

## CONCLUSION

¶27. This Court finds that the issue presented by Watkins is without merit. The trial judge did not abuse his discretion in excluding the testimony of expert witnesses Richard Forbes and Albert Medina.

¶28. **THE JUDGMENT OF THE CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT OF HINDS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.**

**McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, MOORE, PAYNE, AND THOMAS, JJ., CONCUR. IRVING, J., DISSENTS WITHOUT WRITTEN OPINION.**