LEE, P.J.,
 

 for the Court:
 

 PROCEDURAL HISTORY
 

 ¶ 1. Paula Denham and Pamela Caldwell were involved in a vehicle accident with Adam Holmes. Denham and Caldwell filed a complaint against Holmes in the Circuit Court of Lafayette County, alleging that Holmes was negligent in operating his motor vehicle.
 

 ¶ 2. The case was heard by a jury, which returned a verdict in favor of Holmes. Denham and Caldwell filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial. The motion was denied by the trial court.
 

 ¶ 3. Denham and Caldwell now appeal, alleging the trial court erred by: (1) excluding the testimony of their expert witness; (2) allowing Holmes’s attorney to make reference during closing arguments to the lack of expert testimony; (3) granting jury instructions D-4 and D-9; (4) denying their motion for a JNOV; and (5) denying their motion for a new trial. Finding error, we reverse and remand this case to the trial court for a new trial.
 

 FACTS
 

 ¶ 4. Denham was attempting a left turn on University Avenue in Oxford, Mississippi when her vehicle collided with a pickup truck driven by Holmes. The front left side of Holmes’s truck struck the front passenger side of Denham’s car as she attempted to turn into the parking lot of Ken Ash Construction Company. Caldwell, Denham’s sister, was a passenger in Denham’s vehicle, and Lee Durham was a passenger in Holmes’s truck. Prior to trial, the parties stipulated that certain physical injuries and medical expenses were incurred as a result of the accident.
 

 ¶ 5. Denham testified that she stopped, turned on her left-turn signal, and waited for oncoming traffic to clear before turning. Denham and Caldwell testified that there was no visible oncoming traffic when Denham executed the turn. Denham testified that the front wheels of her car were in the construction company’s parking lot when her car was hit by Holmes’s truck. Denham’s car was pushed across both lanes of traffic on University Avenue, and the car came to rest on the opposite side of the road with the front end of the car completely off the road. Holmes’s truck came to rest seventy-five feet inside the construction company’s parking lot. Both cars were totaled in the accident.
 

 ¶ 6. Caldwell testified that she did not see Holmes’s truck until an “instant” prior to impact. She stated that Holmes was driving “crazy fast,” and she did not have time to warn Denham of the approaching vehicle. Holmes testified that he was driving approximately forty-five miles per hour when Denham turned in front of him. Durham testified that he saw Denham’s vehicle make an abrupt left turn as the vehicle was “almost right on them.” Holmes testified that he applied his brakes and steered to the right in an effort to avoid hitting Denham’s car. Deputy Shane Theobald with the Lafayette County Sheriffs Department was the investigating officer at the scene. He testified that the speed limit on University Avenue was forty miles per hour.
 

 DISCUSSION
 

 I. EXPERT TESTIMONY
 

 ¶ 7. Prior to trial, Denham and Caldwell designated Donald Rawson, a traffic-collision reconstructionist, as their expert witness. The parties stipulated that Rawson was properly and timely designated and that he would testify by deposition. The
 
 *806
 
 parties also stipulated that Rawson was qualified to give an expert opinion on the traffic accident.
 

 ¶ 8. At trial, Holmes made an ore tenus motion to exclude Rawson’s testimony on the basis that it would not aid the jury in reaching its decision. Holmes also questioned the reliability of the testimony and noted that Rawson did not view the actual wrecked vehicles or personally speak with Holmes, Durham, or Deputy Theobald. Holmes argued that Rawson’s testimony only reiterated what the police report stated; thus, it was unnecessary. The trial court granted the motion. The trial court allowed Rawson’s deposition, report, and curriculum vitae to be entered as exhibits for identification purposes to serve as a proffer of the proposed testimony. Den-ham and Caldwell objected to the ruling. Their objection was overruled.
 

 ¶ 9. The admission of-expert testimony is within the .sound discretion of the trial judge.
 
 Roberts v. Grafe Auto Co.,
 
 701 So.2d 1093, 1098 (Miss.1997). The admissibility of expert testimony is evaluated in light of Mississippi Rule of Evidence 702, which states:
 

 If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or- education, may testify thereto in' the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.
 

 This rule emphasizes that it is “the gate[-]keeping responsibility of the trial court to determine whether the expert testimony is relevant and reliable.” M.R.E. 702 cmt.
 

 ¶ 10. For expert testimony to be admissible, it must be both relevant and reliable.
 
 Daubert v. Merrell Dow Pharm., Inc.,
 
 509 U.S. 579, 592-94, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).
 
 Daubert
 
 provides an illustrative list of factors 'that trial courts may use in assessing the reliability of expert’ testimony.
 
 Id.; see also Miss. Transp. Comm’n v. McLemore,
 
 863 So.2d 31, 38 (¶ 16) (Miss.2003). The
 
 Daubert
 
 factors include:
 

 whether the theory or technique can be and has been tested; whether it has been subjected to peer review and publication; whether, in respect to a particular technique, there is a high known or potential rate of error; whether there are standards controlling the technique’s operation; and whether the theory or technique enjoys general acceptance within a relevant scientific community.
 

 McLemore,
 
 863 So.2d at 37 (¶ 13). “Depending on the circumstances of the particular case, many factors may be relevant in determining reliability, and the
 
 Daubert
 
 analysis is a flexible one.”
 
 Id.
 
 at 38 (¶ 16).
 

 ¶ 11. Denham and Caldwell argue that Rawson’s testimony would have assisted the jury on technical issues such as speed, sight line, and distance between the vehicles. They argue that the exclusion of Rawson’s testimony was prejudicial because several of the jury instructions hinged on the speed of Holmes’s vehicle and distance between the vehicles. Specifically, the jury was instructed to determine if Holmes was driving at a speed that was reasonable and prudent and whether the proximity of Holmes’s vehicle created an immediate hazard to which Denham should have yielded. Denham and Caldwell argue that speed clearly played a role in the accident as evidenced by where the vehicles came to rest after the collision.
 

 
 *807
 
 ¶ 12. Rawson would have testified that based on the police report, which stated that Holmes was traveling forty-five miles per hour, Holmes’s vehicle was 206 feet from Denham’s vehicle when Denham began her turn. He testified that there was no obstruction of view between the vehicles. Based on his calculations, it took Holmes’s vehicle 3.12 seconds to travel the 206 feet to Denham’s car. He testified that Denham could have completed the turn in 3.62 seconds. Therefore, Rawson’s opinion was that Holmes could have taken evasive action to avoid the accident. He testified that if Holmes would have slowed down to thirty-one miles per hour, Denham would have safely made the turn. He stated that his opinion was based on the lack of skid marks on the pavement in the photographs he was given of the scene. He was not sure when the photographs were taken. He noted in his report that there was no method to determine the speed of the vehicles using physical evidence.
 

 ¶ 13. The trial court found that Raw-son’s testimony was relevant and would assist the jury. However, the trial court excluded the testimony because it found that Rawson’s conclusions were based on “insufficient facts and data.” Specifically, the trial court noted that Rawson did not factor in the “crush damage” to the vehicles or take into account reaction time in determining speed. Also, the trial court stated that some of Rawson’s opinions were legal conclusions which invaded the province of the jury.
 

 ¶ 14. We find that Rawson’s testimony was technical in nature and would have assisted the jury in understanding the evidence and determining the facts in issue. We also find that the testimony was based on the facts available from the accident scene and should have been admitted. At trial, testimony was presented to the jury by Denham; Caldwell; Holmes; Durham; Frances Denham, Denham’s husband; John Caldwell, Caldwell’s husband; and Deputy Theobald. Deputy Theobald testified as to the information in the accident report, but he gave no scientific or technical testimony. Therefore, the jury was given no expert testimony to use to draw a conclusion as to the negligence of the parties. We find that without such testimony, the jury did not have sufficient information from which to reach a verdict. Therefore, we find that the judgment should be reversed, and the case remanded for a new trial with the inclusion of the expert testimony.
 

 II. CLOSING ARGUMENT
 

 ¶ 15. Denham and Caldwell argue that because their expert was not allowed to testify, it was reversible error for Holmes’s counsel to comment on the lack of expert testimony in closing arguments.
 

 ¶ 16. During closing arguments, Holmes’s counsel stated:
 

 Now, they want to talk about property damage and where the vehicles ended up. There’s no evidence. There’s no evidence here of ... what speeds cause property damage. The plaintiffs’ attorneys] ... got up here and told you that you would hear from the witnesses and you would hear from an experts [sic] get up and testify.
 

 Denham’s counsel objected and asked for a mistrial or for the jury to be instructed to disregard the comment. The objection was overruled by the trial court. Holmes’s attorney continued: “There is no testimony regarding what in any way the speed had to deal [sic] or in any way contributed to this accident. There’s no evidence from anybody, anybody sitting here today, that speed somehow contributed to the accident.”
 

 ¶ 17. Denham and Caldwell argue that the comments were particularly harmful
 
 *808
 
 because their counsel stated during opening statements that they would present expert testimony to support their position that Holmes was speeding. The supreme court has held that: “The test in determining whether a lawyer has made an improper argument which requires reversal is ‘whether the natural and probable effect of the improper argument ... creates an unjust prejudice against the opposing party resulting in a decision influenced by the prejudice so created.’ ”
 
 Eckman v. Moore,
 
 876 So.2d 975, 986 (¶ 38) (Miss.2004) (quoting
 
 Davis v. State,
 
 530 So.2d 694, 701-02 (Miss.1988)).
 

 ¶ 18. In
 
 Shell Oil Co. v. Pou,
 
 204 So.2d 155, 157 (Miss.1967), the supreme court stated that: “The only legitimate purpose of the [closing] argument of counsel in a jury case is to assist the jurors in evaluating the evidence and in understanding the law and in applying it to the facts.” We find that Holmes’s counsel’s comments in closing argument were not made in furtherance of evaluating the evidence or understanding the law; rather, the comments were made to arouse prejudice in the eyes of the jury. Therefore, we find that it was reversible error for the trial court not to instruct the jury to ignore these comments.
 

 III. JURY INSTRUCTIONS D-4 AND D-9
 

 ¶ 19. Denham and Caldwell objected to jury instructions D-4 and D-9. “On review of a challenge to a jury instruction, ‘we will not find reversible error where the instructions actually given, when read together as a whole, fairly announce the law of the case and create no injustice.’ ”
 
 Lepine v. State,
 
 10 So.3d 927, 944 (¶ 49) (Miss.Ct.App.2009) (quoting
 
 Ford v. State,
 
 975 So.2d 859, 864 (¶ 11) (Miss.2008)).
 

 ¶ 20. Jury instruction D-4 states:
 

 The violation of any posted speed limit or allegations of driving at an excessive speed are only relevant if the plaintiffs have shown, from a preponderance of the evidence, that the speed of Adam Holmes was the sole proximate cause or proximate contributing cause to the accident. Unlawful speed is not a proximate cause of an accident caused by the intervening negligence of another person.
 

 Therefore, should- you find from a preponderance of the evidence that the motor vehicle accident of July 15, 2004 was the sole proximate cause of the actions of Paula Denham, then any violation of the speed limit or allegations of driving at an excessive speed are irrelevant to your decision.
 

 ¶ 21. In jury instruction D-4, the last sentence of the first paragraph states: “Unlawful speed is not a proximate cause of an accident caused by the intervening negligence of another person.” Denham and Caldwell argue that this sentence made the instruction equivalent to a contributory-negligence instruction. Holmes asserts that any confusion by this sentence was remedied by the last sentence of the instruction which goes on to state that only if the accident “was the sole proximate cause of the actions of Paula Denham, then any violation of the speed limit or allegations of driving at an excessive speed are irrelevant to your decision.”
 

 ¶22. “Mississippi is a pure comparative[-]negligence state.”
 
 Coho Resources, Inc. v. Chapman,
 
 913 So.2d 899, 911 (¶ 36) (Miss.2005) (citing Miss.Code Ann. § 11-7-15 (Rev.2004)). Mississippi Code Annotated section 11-7-15 states:
 

 In all actions hereafter brought for personal injuries, or where such injuries have resulted in death, or for injury to property, the fact that the person injured, or the owner of the property, or
 
 *809
 
 person having control over the property may have been guilty of contributory negligence shall not bar a recovery, but damages shall be diminished by the jury in proportion to the amount of negligence attributable to the person injured, or the owner of the property, or the person having control over the property.
 

 ¶ 28. As it implied contributory negligence, we find that jury instruction D-4 was a misstatement of the law and was potentially misleading to the jury. This jury instruction also contradicted jury instruction D-10, which asked the jury to assign a percentage of fault between the parties. We find that it was reversible error for the trial court to grant jury instruction D-4 as it was written.
 

 ¶ 24. Jury instruction D-9 states: “When considering who is at fault for an accident, and/or injuries, you may take into account the conduct of those who are not parties to this lawsuit. Although not a party to this lawsuit, you may consider the actions or omissions of Paula Denham in reaching your verdict.” The last sentence of this instruction which states that Paula Denham was not a party' to the lawsuit is a clear misstatement of the facts and could have been misleading to the jury. Therefore, we also find that it was error for the trial court to grant this instruction.
 

 ¶ 25. Due to the errors in this case, we find that the parties were denied the right to a fair trial. Therefore, we reverse the judgment and remand this case to the trial court for further proceedings consistent with this opinion.
 

 ¶ 26. THE JUDGMENT OF THE LAFAYETTE COUNTY CIRCUIT COURT IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE.
 

 KING, C.J., MYERS, P.J., GRIFFIS AND ISHEE, JJ., CONCUR. ROBERTS AND MAXWELL, JJ., CONCUR IN PART AND IN THE RESULT. IRVING AND BARNES, JJ., CONCUR IN RESULT ONLY.