596 So.2d 865 (1992)
William J. JOHNSON a/k/a William Hawkins, Jr.
v.
STATE of Mississippi.
No. 90-KA-0903.
Supreme Court of Mississippi.
March 25, 1992.
*866 James H. Powell, III, Durant, for appellant.
Michael C. Moore, Atty. Gen., Wayne Snuggs, Asst. Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and SULLIVAN and BANKS, JJ.
BANKS, Justice, for the Court:

I.
William J. Hawkins, Jr. prosecutes this appeal from his convictions of receiving stolen property and recidivism and the five (5) year sentence, without the benefit of probation or parole, imposed by the lower court.
Hawkins contends on appeal the trial judge erred in overruling his motion for a mistrial made after the district attorney commented upon the defendant's post-arrest silence during closing argument. We reverse and remand the case for a new trial because the prosecutor's repeated references to the defendant's silence were not supported by the evidence, were highly inflammatory and improper, and were fatally prejudicial to Hawkins.

II.
On Saturday, June 23, 1990, George Ross, custodian of the Mount Zion Missionary Baptist Church in Holmes County, Mississippi, discovered the church had been burglarized. Two gas heaters and a vacuum cleaner were missing. Ross testified the last time he observed the heaters inside the church was on Sunday, June 17th. He promptly reported the theft to the Holmes County Sheriff's Department, and a deputy was dispatched to investigate.
Several days later Deputy Roosevelt March received a telephone call from someone in the Greenwood Police Department informing him they thought they had located the heaters in question. Deputy March took Mr. Ross to Perry's Pawn Shop in Greenwood where Ross identified two heaters pawned by the defendant a few days earlier as the heaters that had been stolen from the Mount Zion Baptist Church.
Billy Perry, the owner of Perry's Pawn Shop, testified the defendant, William Hawkins, came into his place of business on June 20, 1990, and pawned the two heaters for $50.00. Mr. Perry's business records reflect the nature of the transaction.
Roosevelt March testified he subsequently arrested the defendant in connection with the theft. Deputy March's testimony does not reflect whether or not he gave Hawkins the Miranda warnings either before or after his arrest of Hawkins and whether or not Hawkins invoked his right to silence at that particular moment or at anytime thereafter.
Hawkins, who lived in Tchula with his mother, testified in his own behalf and denied he knowingly received stolen property. He freely admitted he pawned the two heaters at Perry's Pawn Shop but claimed he did so only at his mother's request. According to Hawkins, the heaters had been removed from his mother's former home in Tchula. On June 18, 1990, the heaters, together with several other items, were deposited in the driveway of his mother's *867 new home in Tchula by a man named Percy. Neither Percy nor the defendant's mother testified at the trial of this cause.
During the defendant's closing argument, defense counsel argued the State had failed to produce any evidence that Hawkins knew the heaters were stolen. Counsel pointed out that Hawkins had offered a satisfactory explanation of his possession during the trial. Specifically, he argued "... that nobody has contradicted what [Hawkins] said about coming into possession of the heaters, that nobody has testified that he had any way of knowing that those heaters were stolen and that nobody has contradicted his statement and his story that he pawned them for his mother."
The State countered the defendant's argument with the following comments which have been vigorously assailed on appeal:
Let me tell you what. There's nothing wrong with this case. The simple truth is that that man right there got these heaters, and I don't know how, that's unexplained. Do you know how? I don't think you believe that somebody named Perry who lives somewhere out there brought these heaters along with a bathtub and some other items and dropped them in the yard. Not Perry, Percy; excuse me.
The simple truth is that that's a smoke screen in itself; and you listen to the law that the Judge gave you. It tells you to use your common sense when making a decision about this case. Common sense. Common sense.
Did you remember what Deputy Roosevelt said? "Did you make an arrest?" "Yes." "Who did you arrest?" "That man right there. Gave him his [M]iranda rights and he made no statement." Common sense. Don't you believe that if you got arrested and somebody named Percy had dropped these things in your yard you'd say, "Wait a minute, Deputy Roosevelt March, go find Percy?" Don't you think you would have said that? What does your common sense tell you about that?
"This fellow named Percy who lives out there somewhere close to Tchula must have dropped them in my yard." Not a word about that until when? Until today. See, today is the first time that story has come out. Put your common sense to work on that and ask yourselves, "Wait a minute." I believe I would have said to Roosevelt, "Hey, let's go find Percy and bring him in there."
* * * * * *
All the elements are there. The only question is did he know that they were stolen[?] That's really the issue and there's no question about that. Mr. Powell is right when he revolves the case around that, but you use your common sense and ask yourself why, No. 1, did he not bring up Mr. Percy until today. No. 2, what is he doing up there pawning these things and when they asked him about it not even giving any explanation. Unexplained. Remember the law? Unexplained possession? He has made no explanation of his possession of these items until today. [emphasis supplied]
Hawkins made no objection contemporaneous with the making of these remarks. Rather, immediately after the prosecutor's argument, but while the jury was still in the jury box, appellant moved for a mistrial in chambers on the grounds that "... I don't think it was testified to by Deputy March that Mr. Hawkins was advised of his rights and made no statement; but even if he had testified to that, it was an improper comment on his failure to make a statement after being advised of his Miranda rights and also a comment that for the unexplained knowledge ... until today has he made any statement again with reference to that and a disregard of his constitutional rights under the Fifth Amendment of the United States Constitution."
The district attorney responded to the defendant's objection by stating, "It's a fair comment on the evidence, Your Honor. That is the testimony of the witness and that is a fact, No. 1. No. 2, he didn't object to it." [emphasis supplied] The following colloquy then took place:
BY MR. POWELL: I have objected to it as soon as he closed. I . . I couldn't *868 have cured it after it had came out of his mouth.
BY MR. CARLTON: Well the Judge might could have though. That's the point.
BY MR. POWELL: Well I suppose that's still an option. [emphasis supplied]
The trial judge held the comments constituted legitimate oratory and overruled the defendant's motion for a mistrial.
Hawkins, citing Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), claims he was denied a fair and impartial trial because the remarks made by the district attorney concerning his failure to make a post-arrest statement were not supported by any evidence introduced during trial and because they constituted an improper comment on Hawkins's exercise of his constitutional right to silence. This contention has caused us considerable concern.

III.
In Doyle v. Ohio, the Supreme Court of the United States held the prosecutor's use of the defendants' post-arrest silence to impeach their exculpatory story, told for the first time at trial, by cross-examining them about their failure to have told the story after receiving Miranda warnings at the time of their arrest, violated the defendants' right to due process guaranteed by the Fourteenth Amendment.
The doctrinal basis for the Doyle decision was fully explained in Anderson v. Charles, 447 U.S. 404, 408, 100 S.Ct. 2180, 2182, 65 L.Ed.2d 222, 226 (1980), where the Court opined: "... Miranda warnings inform a person of his right to remain silent and assure him, at least implicitly, that his silence will not be used against him. [citations omitted] Doyle bars the use against a criminal defendant of silence maintained after receipt of governmental assurances." [emphasis supplied] See also Jenkins v. Anderson, 447 U.S. 231, 239-40, 100 S.Ct. 2124, 2129-30, 65 L.Ed.2d 86, 95-96 (1980).
In Doyle the prohibited use involved cross-examination of the defendants about their post-Miranda silence. Over objections made by defense counsel, the prosecutor was permitted to cross-examine Doyle and his confederate as to why they had not given the arresting officer the exculpatory explanations.
We agree with the State that a prohibited use also includes a prosecutor's closing argument commenting upon that silence. This observation is amply illustrated by Wainwright v. Greenfield, 474 U.S. 284, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986), which held that a prosecutor's comment in closing arguments that a criminal defendant's post-arrest exercise of his right to remain silent, after receiving Miranda warnings, was evidence of his sanity also violated the due process clause of the Fourteenth Amendment.
In the case at bar, the defendant testified in his own behalf and offered an explanation for his possession of the two heaters. Unlike the defendant in Doyle, however, Hawkins was never cross-examined about any post-arrest or post-Miranda silence. There was no testimony flowing from the mouth of the defendant that he was given his rights and that he made no statement.
Similarly, nothing within the four corners of Deputy March's testimony fills this void. Contrary to the assertion made by the district attorney, Deputy March never testified that Hawkins received the Miranda warnings either prior to or following his arrest, and March never indicated one way or the other whether Hawkins spoke or elected to remain silent. To the contrary, Deputy March simply acknowledged he arrested Hawkins in connection with this case.
We find the prosecutor's statement to the jury that Deputy Roosevelt "gave [Hawkins] his Miranda rights and [Hawkins] made no statement" is not supported by the record. We further find that subsequent remarks which mistakenly indicated as proven fact that Hawkins never explained his possession "until today" also lacked evidentiary support. In short, there is no evidence in the record that Hawkins was given his Miranda warnings, that he *869 made no statement, and that he was telling his story about "Percy" for the first time in court.
Although the defendant's attorney failed to make a contemporaneous objection to the improper remarks at the moment they were made, defense counsel objected and moved for a mistrial in chambers immediately after the district attorney concluded his argument. Counsel also stated specific grounds for his motion  lack of evidentiary support  and put the trial judge on notice that an admonishment from the bench to disregard the improper comments was still a viable option inasmuch as the jury had not retired to deliberate.
In any event, the trial judge held the prosecutor's argument was proper and overruled the defendant's motion for a mistrial. There is no reason to believe that a contemporaneous objection would not have met a similar fate.
In Wideman v. State, 339 So.2d 1378, 1382 (Miss. 1976), this Court found that certain statements made by the prosecuting attorney were improper and admonished prosecutors of "the dangers of reversal in going outside the record in their arguments [to the jury]." The Court did not feel, however, under all the facts and circumstances, the remarks in Wideman constituted reversible error. We reach an opposite conclusion in the case at bar.
"[T]he test to determine if an improper argument by a prosecutor requires reversal is whether the natural and probable effect of the prosecuting attorney's improper argument created unjust prejudice against the accused resulting in a decision influenced by prejudice." Dunaway v. State, 551 So.2d 162, 163 (1989). In Dunaway, supra, we further opined:
A defendant is entitled to a fair and impartial trial before a jury not exposed to abusive arguments appealing to their passions and prejudices. Although ours is an adversary system, prosecuting attorneys must exercise caution and discretion in making extreme statements in their arguments to the jury, if for no other reason than to save themselves, the defendant, the court and the jury the additional time, expense and effort involved in a retrial. [emphasis supplied]
The prosecutor's repeated references to Hawkins's silence, all of which lacked evidentiary support, were improper and highly prejudicial to him. They require reversal because they had the probable effect of unfairly influencing the jury's decision-making.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PRATHER, ROBERTSON, and SULLIVAN, JJ., concur.
HAWKINS, P.J., and McRAE, J., dissent.
PITTMAN, J., not participating.
HAWKINS, Presiding Justice, dissenting:
I respectfully dissent.
There is an important difference between Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), and this case. In Doyle the U.S. Supreme Court held that if an accused under arrest was given a Miranda warning and told that he had a right to remain silent, and the accused did remain silent, that the government thereafter could not use his choice of remaining silent as a weapon during his trial testimony cross-examination to cast suspicion on his guilt or innocence. Simply put, the government cannot use an accused's exercise of a Constitutional right as a weapon to convict him, for to do so would emasculate that right.
Doyle does not hold, however, that an accused can use his exercise of a Constitutional right as an offensive weapon to mislead a jury. It cannot be used as a barrier to prevent the government in rebuttal from exposing a defense attempt during trial to mislead the jury.
In Doyle the two defendants, when arrested and given Miranda warnings informing them of their right to remain silent, chose to remain silent. Thereafter, in each of their trials, following their explanation *870 on direct examination of why they were not guilty, the State proceeded to cross-examine them about their not telling the police officers their in-trial stories. The Court held that the State, having told them they had a right to remain silent when arrested, could not at trial cross-examine them about their choice to exercise this right.
The dissent in Doyle argued this was legitimate cross-examination of inconsistent past conduct, but both the majority and dissent agreed that neither could the accused use his choice of remaining silent as a means of misleading the jury. If he attempted on his own in some way to mislead the jury, the State had a right to respond. Doyle, 426 U.S. at 619, 96 S.Ct. at 2245, 49 L.Ed.2d at 98, fn. 11; Stevens dissenting, 426 U.S. at 620, 96 S.Ct. at 2246, 49 L.Ed.2d at 99:
It goes almost without saying that the fact of post-arrest silence could be used by the prosecution to contradict a defendant who testifies to an exculpatory version of events and claims to have told the police the same version upon arrest. In that situation the fact of earlier silence would not be used to impeach the exculpatory story, but rather to challenge the defendant's testimony as to his behavior following arrest. Cf. U.S. v. Fairchild, 505 F.2d 1378 (5th Cir.1975).
In this case the prosecution complied with Doyle, and when Hawkins testified made no effort to cross-examine him about remaining silent when arrested.
Defense counsel in closing argument, however, could not let well enough alone:
[N]obody has contradicted what [Hawkins] said about coming into possession of the heaters, that nobody has testified that he had any way of knowing that those heaters were stolen and that nobody has contradicted his statement and his story that he pawned them for his mother.
When defense counsel made this argument, he well knew that there was an inconsistency between Hawkins's post-arrest silence and his telling for the first time ever when he testified at trial how he came in possession of the heaters. If his trial version of the facts were correct, that he quite innocently came into possession of the heaters, one would certainly wonder why it never occurred to him to tell this to the law enforcement officers when first questioned. Under Doyle the State could not bring this out on cross-examination, but when defense counsel in this case attempted to mislead the jury by intimating this had been Hawkins's story all along, that there was no "contradiction," the State surely had a right to uncover the mask.
I would affirm.
McRAE, J., joins this opinion.