# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 1999-KA-01698-COA

**TIMOTHY MCGRONE A/K/A THOMAS MCCALLAHAN**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/03/1999 |
| TRIAL JUDGE: | HON. JAMES E. GRAVES JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | THOMAS M. FORTNER |
| | ROBERT M. RYAN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: CHARLES W. MARIS JR. |
| DISTRICT ATTORNEY: | EDWARD J. PETERS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | MOTOR VEHICLE THEFT (HABITUAL OFFENDER) - SENTENCED TO SERVE A TERM OF 5 YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS. |
| DISPOSITION: | REVERSED AND REMANDED- 4/3/01. |
| MOTION FOR REHEARING FILED: | 5/15/2001; denied 8/14/2001 |
| CERTIORARI FILED: | 8/16/2001; granted 10/11/2001 |
| MANDATE ISSUED: | |

EN BANC

IRVING, J., FOR THE COURT:

¶1. Timothy McGrone was tried and convicted of auto theft. Feeling aggrieved, he perfected this appeal and charges in his sole issue on appeal that certain questions posed by the State during cross-examination and certain comments by the State's attorney during closing argument constituted impermissible references to his post-arrest right to remain silent. He argues that the trial court's decision to allow the comments constituted reversible error. This Court agrees.

## FACTS

¶2. The charge for which McGrone stands convicted on this appeal is auto theft. There were no witnesses to the theft of the truck. Immediately preceding its theft, the truck was parked at a construction site where its owner was working. A police report was made as soon as the theft was discovered, and the truck was spotted by police officers soon after the dispatch went out. McGrone was also indicted on other charges in

connection with the theft as a result of his attempt to evade police capture by leading them on a high speed chase through the city of Jackson. Those charges included two counts of aggravated assault on police officers and one count of assault on a dispatcher trainee. The police chase ended when McGrone crashed the stolen truck into a house. McGrone then exited the crashed truck and fled on foot. When he was finally apprehended, McGrone allegedly struggled with one of the police officers for control of the officer's weapon. The struggle ended when McGrone received a gunshot wound to the leg.

¶3. McGrone was granted a pretrial motion *in limine* that prohibited the admission or mentioning of any evidence of any other criminal charges against him in connection with the theft of the truck. The prosecution agreed to the motion and even moved to have two of the untried charges voluntarily dismissed without prejudice. At trial, McGrone's defense to the charge of auto theft was that he did not steal the truck. He claimed that he was driving the truck with the permission of his passenger, Milton Stewart, who had agreed to allow McGrone the use of the truck for a few hours at a cost of twenty dollars. Stewart had already testified to the contrary during the State's case-in-chief.

¶4. Stewart's testimony was that McGrone drove the truck to Stewart's residence on the day of the theft and claimed that the truck belonged to McGrone's uncle who was in the construction business. The truck's true owner was in the construction business, and there were items connected with the construction business on the truck. Therefore, Stewart said he believed the story. According to Stewart, McGrone told him that McGrone's uncle was looking for workers that day and, if Stewart was interested in working, to ride with him to the work site. Stewart testified that he agreed to go and that that is how he came to be in the truck with McGrone when the police spotted the truck and tried to stop it. Stewart testified that he jumped from the truck during the chase after McGrone ignored all of the efforts of the police to get him to stop.

¶5. McGrone admitted during his trial testimony that he did not stop the truck. He testified that he did not stop the truck because he was afraid, not because he had stolen the truck. He said that, when he stopped the truck momentarily at a police roadblock, Stewart admitted that the truck was stolen. McGrone said that he then saw an individual coming toward the truck with a gun in his hand. Thinking that he might be the truck's owner, McGrone drove off and kept driving because he was afraid of being shot by the owner and caught by the police while driving a stolen vehicle. The individual with the gun was actually a plain-clothed Jackson police officer.

## ANALYSIS OF ISSUE PRESENTED

¶6. At trial McGrone was questioned as follows:

CROSS-EXAMINATION BY MS. WOOTEN:

Q. Mr. McGrone, when did you tell the police that Milton Stewart stole this vehicle?

MS. JACKSON: Objection, Your Honor

THE COURT: Overruled.

Q. When did you tell the police that Milton Stewart stole the truck?

A. I've never spoken to the police to this very day.

Q. You have never had the opportunity to tell the police that Milton Stewart stole the truck.

MS JACKSON: Objection, Your Honor.

THE COURT: Basis?

MS. JACKSON: He's not required to talk to the police.

THE COURT: Overruled.

Q. Did you hear my question?

A. Yes, ma'am. I've never spoken with the police.

Q. And my question was did you have an opportunity to tell the police that Milton Stewart stole the truck, not you?

A. No. ma'am.

Q. You never had that opportunity?

Q. When the police arrested you between the two houses on Valley Street, was there something wrong with your throat that you couldn't talk?

MS. JACKSON: Objection, Your Honor, he has a Fifth Amendment right not to talk with them.

MS. WOOTEN: Your Honor, he's taken the stand. He's waiving that.

THE COURT: Overruled.

* * * *

Q. Mr. McGrone, in the year and a half that you have been incarcerated, have you once told anyone from the Jackson Police Department or the Hinds County Sheriff's Department that you did not steal this car and Milton Stewart stole the car?

A. No.

Q. You've never done that?

A. I've never had the opportunity.

Q. You have never done that.

A. I have never spoken with anybody.

Q. You've never had the opportunity to speak to a deputy of the Sheriff's Department?

A. Nobody has ever tried to talk to me concerning this case.

¶7. The following occurred during the State's closing argument:

MR. COLLINS: And I would take my coat off and wave it just to show it, but I won't do it. If I was locked up in the Hinds County Detention Center for a year and a half, you could hear me hollering at the top of my lungs if someone else did it as those deputy sheriffs walked by every two or minutes [sic], hey, somebody else did this. Hey, somebody else did this.

MS JACKSON: Objection, Your Honor.

THE COURT: Overruled.

MR. COLLINS: But he didn't say a word. He didn't say a word until he could think up how to put it off on someone else. It narrows the gap and narrows the question.

¶8. McGrone argues that these questions and comments by the State constituted impermissible references to his post-arrest right to remain silent and were unfairly prejudicial. The same argument was made at the hearing on the motion for JNOV or, in the alternative, for a new trial, and the trial court had this response:

THE COURT: Here's where I am. I'm making a ruling. It's over. I am going to deny the motion for a new trial or to set aside the verdict. If there is any way to expedite the appeal, I want it expedited. And for the record, for the appellate court, there is no question that the trial record was silent on the issue of any *Miranda* warnings, when they were given, whether or not a *Miranda* warning was ever given. And it's clear to me that that factual determination is critical to the application of *Doyle* in this case. All other facts, I think it's conceded, are on all-fours with *Doyle*. With regard to the *Miranda* warnings, our trial record was silent.

¶9. In *Doyle v. Ohio*, 426 U.S. 610, 619 (1976), the United States Supreme Court held that in a case where the defendant had been mirandized at the time of arrest, it was a violation of the Due Process Clause of the Fourteenth Amendment to cross-examine the defendant regarding the defendant's post-mirandized silence to impeach the defendant's exculpatory story which was told for the first time at trial. The Mississippi Supreme Court in *Johnson v. State*, 596 So. 2d 865, 868 (Miss. 1992) ( citing *Wainwright v. Greenfield*, 474 U.S. 284 (1986)) made it clear that a prosecutor's closing argument commenting upon that silence is also prohibited.

¶10. *Johnson* involved comments made by a prosecutor during closing argument, not about questions during cross-examination, regarding the defendant's story told for the first time during trial. The facts in *Johnson*, however, are similar to the facts in our case regarding the absence of the *Miranda* warnings. The prosecutor had argued during closing argument that the police had mirandized the defendant and that the defendant had failed to tell the police, after being mirandized, the story that the defendant told at trial. The defense did not make a contemporaneous objection but did make an objection, as well as a motion for a mistrial, at the close of the prosecution's argument. The objection was twofold: lack of evidence in the record to support the statement that defendant had been mirandized and thereafter chose to remain silent and, even if there were evidence to that effect in the record, the prosecutor's argument ran afoul of the defendant's Fifth Amendment rights. *Johnson*, 596 So. 2d at 867.

¶11. The *Johnson* court reversed and remanded because of the improper comments by the prosecutor. However, it appears that while the *Johnson* court discussed *Doyle*, it based its decision to reverse and remand not squarely on the fact that the comments ran afoul of the defendant's Fifth Amendment rights but as well, on the fact that the comments lacked evidentiary support. This is what the court said: "The

prosecutor's repeated references to Hawkins's [also known as Johnson] silence, all of which lacked evidentiary support, were improper and highly prejudicial to him. They require reversal because they had the probable effect of unfairly influencing the jury's decision making." *Id*. at 869.

¶12. In an earlier case, *Austin v. State*, 384 So. 2d 600, 601 (Miss. 1980), the Mississippi Supreme Court held that it was error for the prosecution to comment on a defendant's post-arrest silence. This holding does not appear to turn on whether the *Miranda* warnings were given as there was no discussion of them in the opinion. However, the court further held that the error was harmless in light of the overwhelming evidence of appellant's guilty. *Id*. In *Austin*, the defense counsel made the following statement in closing argument:

> Here and now is the first time that anyone has heard his side of this case, and I ask you, as the only people who have ever hear his side of the case and the only people probably that ever will hear his side of the case . . . .

In response to the statement by defense counsel, the district attorney said, "And, if he was not guilty, why didn't he tell the law enforcement officers that. I asked him, did he give a statement. No." *Id*.

¶13. The State argues that the reason for the *Doyle* rule is the unfairness of first telling a defendant that he has a right to remain silent, implicitly assuring him that his silence will carry no penalty, and then using his silence against him at trial. The State contends that the rule only applies in the case of an individual who is given a *Miranda* warning. It is the State's contention that where there are no *Miranda* warnings, there is no implied assurance that the silence will not be used, and the silence then becomes probative and relevant and should be allowed. This Court disagrees.

¶14. Under the State's reasoning, the police could simply withhold giving the *Miranda* warnings to an individual following the individual's arrest and then take advantage of the defendant's post-arrest silence even if the defendant knew without being informed by the police that he had a constitutional right to remain silent. It seems to this Court that the Fifth Amendment of the U. S. Constitution expressly guarantees the right against self-incrimination and that guarantee is not, and never has been, dependent upon whether a *Miranda* warning is given or not. Logically, it does not follow that an individual who simply remains silent without having been told by law enforcement that he has that right loses the protection of the guarantee while an individual who is given the *Miranda* warning and remains silent is allowed the protection of the guarantee.

¶15. In *Puckett v. State*, 737 So. 2d 322 ( ¶85) (Miss. 1999), the Mississippi Supreme Court held the following:

> The purpose of *Miranda* is to protect the defendant's Fifth Amendment right against self-incrimination by affording him the right to remain silent. However, if the defendant does not take advantage of his right to remain silent, any statements he voluntarily makes can and will be used against him in a court of law. *The United States Supreme Court's holding in Doyle simply reiterates that the defendant's silence cannot be used against him during cross-examination.* However, because Puckett did not invoke his right to silence, and made voluntary statements, the *Miranda* and *Doyle* provisions do not apply.

(emphasis added).

¶16. Our case differs from *Puckett* in that the record was clear that the defendant in *Puckett* was read the *Miranda* warnings, and here the record is silent as to whether the warnings were given. Nevertheless, we believe that *Puckett* is helpful to our analysis. As shown in the quote above, the Mississippi Supreme Court's view of *Doyle* is that *Doyle* "simply reiterates" an existing right; it does not create a new right. Therefore, it seems to us if the right exists by virtue of the Fifth Amendment to the United States Constitution, it cannot cease to exist by virtue of law enforcement officials' failing to do something that is only intended to reiterate the existence of the right. We hold that the State's cross-examination and closing argument regarding McGrone's post-arrest silence were impermissible references to his post-arrest right to remain silent, and it was error for the trial court to permit the cross-examination and comments during closing argument.

¶17. Having determined that it was error to permit cross-examination regarding McGrone's post-arrest silence and comments about the same during closing argument, we look to see whether the error was harmless. In *Ridley v. State*, 1998-KA-00996 (Miss. Ct. App. Aug. 24, 1999), this Court, quoting extensively from *United States v. Mc. Donald*, 620 F. 2d 559 (5th Cir. 1980), held, as did the *McDonald* court, that in order for reversible error to occur from improper prosecutorial comments regarding a defendant's right to counsel, the comments must "strike at the jugular" of the defendant's exculpatory story. *Id*. at (¶18). Is that the case here? We conclude that it is.

¶18. As stated, McGrone's defense was that he was driving the truck with the permission of his passenger, Milton Stewart, who had agreed to allow McGrone the use of the truck for a few hours at a cost of twenty dollars. He stated that it was only after he had stopped temporarily at one of the roadblocks that Stewart told him that the truck was stolen. He further testified that he continued on through the roadblock, not because he had stolen the truck, but because he saw an armed person approach the truck. According to McGrone, he thought the armed person might have been the owner. On the other hand, Stewart testified for the State and contradicted McGrone's story.

¶19. According to Stewart, McGrone came by Stewart's cousin's house in the stolen truck and asked Stewart if he knew anybody who wanted to work for McGrone's uncle. According to Stewart, he told McGrone that he wanted to work and got in the truck with McGrone. After getting in the truck, Stewart asked McGrone if the truck was stolen, and McGrone said it was not. On these facts, it cannot be said that the prosecutor's attack on McGrone's story during both the cross-examination and closing argument did not "strike at the jugular" of McGrone's defense. Such attack should not have been permitted by the trial court. Accordingly, we reverse and remand this case for further proceedings consistent with this holding.

¶20. **THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS REVERSED AND REMANDED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.**

**McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., THOMAS AND CHANDLER, JJ., CONCUR. LEE, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY PAYNE, BRIDGES, AND MYERS, JJ.**

LEE, J., DISSENTING:

¶21. The majority finds that McGrone's conviction must be reversed because questions and comments by the State constituted impermissible references to his post-arrest right to remain silent and were unfairly prejudicial. I disagree.

¶22. In his efforts to create a defense for himself, McGrone went further and affirmatively charged Stewart with a crime. The crime charged is the theft of the truck. Inasmuch as he asserted that Stewart had committed a crime, why should not the prosecution be allowed to ask him if he had previously told this to the police or anyone else? The Fifth Amendment privilege against self-incrimination is a shield, not a sword. *Jones v. State*, 381 So. 2d 983, 993 (Miss. 1980). Just as any other vital right, the privilege against self-incrimination can be waived so long as it is done so voluntarily and knowingly. *Alexander v. State*, 605 So.2d 1170, 1172 (Miss.1992). This privilege is waived when a defendant takes the witness stand and testifies on the merits of the case. *Hentz v. State*, 496 So. 2d 668, 673 (Miss. 1986). I am of the opinion that when McGrone voluntarily took the stand and testified that Stewart had stolen the truck, he waived his right to remain silent regarding that issue and that it was proper to require him to answer questions relevant to the issue. Moreover, he also opened the door to cross- examination and impeachment to the same extent as any other witness in the same situation. *Id.* It seems to be recognized by all of the courts that this immunity is waived by the accused when he takes the stand and testifies on the merits of the case. The rule in 58 Am. Jur. *Witnesses* § 96 (1948) is quoted in *Autry v. State*, 230 Miss. 421, 92 So. 2d 856 (1957), and states:

> An accused may waive his constitutional immunity from giving testimony against himself by offering himself as a witness. By electing to testify, the accused subjects himself to cross-examination and impeachment, and makes permissible comment by the prosecuting attorney upon his testimony. When he voluntarily takes the witness stand in his own behalf, he waives his constitutional privilege of not answering proper questions that may tend to convict him of the crime for which he is on trial, and, as has frequently been stated, he subjects himself to the same rules that govern other witnesses, and further, he subjects himself to cross-examination and impeachment to the same extent as any other witness in the same situation.

> The constitutional rule against self-incrimination does not limit the cross- examination of an accused testifying in his own behalf, except that he may not be required to state facts constituting an independent crime, unless the answer to the question also tends to convict him of the offense charged or bears on any issue involved in the case. His voluntary offer of testimony upon any fact is a waiver as to all other relevant facts because of the necessary connection between them all. Under this rule the accused by taking the witness stand in his own behalf waives the constitutional guaranty against compulsory self-incrimination not only as to matters about which he has given testimony in chief, but also concerning any matter pertinent to the issue on trial regardless of the extent of the direct examination, and cannot then refuse to testify to any fact which would be competent evidence in the case if proved by any other witness. * * *

> The waiver by the accused is not partial. Having once cast aside the cloak of immunity, he may not resume it at will whenever cross-examination may be inconvenient or embarrassing.

*Autry v. State*, 230 Miss. at 435-36, 92 So. 2d at 861-62.

¶23. It is apparent that the rule recited in *Autry* remains the law in this state. *Moore v. Moore*, 558 So. 2d 834, 837 (Miss. 1990). The opposite rule would permit a witness to give a biased and one- sided version of his proclamation. *Hentz,* 496 So. 2d at 674. McGrone asserted that Stewart stole the truck. He was not being asked why he did not immediately tell the officers of this fact but was asked why he had failed to tell the police his exculpatory story at any time prior to trial. Such evidence is permitted to show consciousness

of guilt. *McClendon v. State*, 387 So. 2d 112, 115 (Miss. 1980). McGrone must be reminded that the Fifth Amendment privilege against self-incrimination is a shield, not a sword. *Jones*, 381 So. 2d at 993. Upon taking the stand as a witness and asserting not only that he did not steal the truck, but upon making the affirmative assertion that Stewart, specifically, had stolen the truck, it is my opinion that McGrone consequently opened the door and waived any right to silence regarding this issue. Permitting silence at this point would allow a biased and one sided version of his defense, *Hentz,* 496 So. 2d at 674, condoning its use as a sword, which precedent clearly forbids. *Id.* I would therefore affirm McGrone's conviction and, accordingly, dissent.

**PAYNE, BRIDGES AND MYERS, JJ., JOIN THIS SEPARATE WRITTEN OPINION.**