# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-KA-00040-SCT

*DAVID ALLEN JONES*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/1/2001 |
| TRIAL JUDGE: | HON. ISADORE W. PATRICK, JR. |
| COURT FROM WHICH APPEALED: | SHARKEY COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | W. RICHARD JOHNSON |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: SCOTT STUART |
| DISTRICT ATTORNEY: | G. GILMORE MARTIN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 10/23/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, P.J., WALLER AND CARLSON, JJ.**

**WALLER, JUSTICE, FOR THE COURT:**

¶1.     David Allen Jones was charged with murder in the shooting death of his wife, Pam, after forensic experts determined that Pam was killed by two gunshots instead of one. At first it was thought that Pam had committed suicide by shooting herself in the side of her head with a .22 pistol. During the autopsy, however, the forensic experts discovered bullet fragments that weighed in excess of what one .22 bullet would weigh. They also found parts of two bullet bases. Because there was only one entrance wound and evidence of two bullet trajectories, suicide was excluded because Pam would not have had sufficient motor skills to fire a second shot. An investigation into Jones's personal affairs revealed that he frequented internet

sex chat rooms, that he had developed a romantic relationship with a woman from Pennsylvania, and that Pam had taken out a loan to pay off Jones's school loans and later purchased a life insurance policy on herself to pay the loan off in the event of her death. After Pam's death, Jones went to Pennsylvania to visit the woman he had met in the chat room. Over a year and a half later, in a purely circumstantial evidence case, Jones was convicted of murder and sentenced to life imprisonment.

¶2.     On appeal Jones raises five issues pertaining to the weight of the evidence, jury instructions, improper closing argument, admission of evidence, and ineffective assistance of counsel. We affirm the conviction and sentence.

## FACTS

¶3.     In January of 1998, Jones, who was, at the time, married to Pam, served as the pastor of the First Baptist Church in Anguilla, Mississippi. While outwardly he led a normal life, in secret he was participating in internet sex chat rooms. His screen name was "Blue Sex." During November of 1997, he met a woman named Tammy Cattano in a chat room. They began communicating, and every day between January 1 and January 17, Jones and Cattano communicated either via the internet or the telephone. During January, and before Pam's death, Cattano received a letter from Jones in which he stated that he wanted to visit her in Pennsylvania. He did visit her shortly after Pam's death and later moved to Pennsylvania. Cattano and Jones eventually parted ways, and at the time of trial, Jones was romantically involved with another woman.

¶4.     Jones and Pam had borrowed $20,000 to pay off Jones's seminary tuition and expenses. They then bought a life insurance policy on Pam to pay off the debt if Pam were to die.

2

¶5.    Jones was the only person in the home at the time of each of the shots.[1]  There was no sign of forced entry.  He testified that he found Pam on her bed with a gunshot wound after he had taken his morning shower.  He then called for an ambulance and told medical personnel that she had attempted to commit suicide.

¶6.    Jones was indicted a year and a half later after experts discovered that two shots were fired into Pam's brain.

## DISCUSSION

### I.    WHETHER THE STATE MET ITS BURDEN OF PROOF IN A CIRCUMSTANTIAL EVIDENCE CASE.

¶7.    The State's case was based purely upon circumstantial evidence, meaning that there was no direct evidence of Jones's involvement in Pam's death.  The State established motive by testimony that Jones had visited internet sex chat rooms and met Cattano with whom he had a serious relationship.  After Pam's death, Jones actually moved to Pennsylvania to live with Cattano.  Also, Pam's life insurance policy paid off a large debt.  The State established opportunity by showing that Jones was the only person in the house during the period of time in which Pam was shot twice.  Fragments of two bullets were found in the brain, and there were two bullet trajectories.  A neighbor testified that she heard a gunshot between 1:00 and 1:30 a.m. and another between 3:00 and 3:30 a.m.

¶8.    To sustain a conviction on circumstantial evidence, every other reasonable hypothesis of innocence must be excluded.  "[D]irect evidence is unnecessary to support a conviction so long as sufficient circumstantial evidence exists to establish guilt beyond a reasonable doubt." *Neal v. State*, 805 So. 2d 520, 526 (Miss. 2002) (quoting *Underwood v. State*, 708 So. 2d 18, 35 (Miss. 1998) (quoting *Conner*

---

[1] A neighbor testified that she heard two gunshots, one around 1:30 a.m., and the other around 3:30 a.m.

3

*v. State*, 632 So. 2d 1239, 1252 (Miss. 1993), *overruled on other grounds*, **Weatherspoon v. State**, 732 So. 2d 158 (Miss. 1999))). "Circumstantial evidence need not exclude every 'possible doubt,' but only every other 'reasonable' hypothesis of innocence." **Neal**, 805 So. 2d at 526 (quoting **Tolbert v. State**, 407 So. 2d 815, 820 (Miss. 1981)). "Each case must be determined from the circumstances shown in the testimony and the facts must consistently point to but one conclusion--guilt." **Neal**, 805 So. 2d at 526 (quoting **Hilliard v. State**, 749 So. 2d 1015 (Miss. 1999)).

¶9.     The State established motive and opportunity. Jones's claim that Pam committed suicide is not a reasonable hypothesis of innocence. Expert testimony established that (1) Pam was shot twice; (2) there was only one entrance wound; and (3) Pam would not have had the motor function needed to shoot herself in the head the second time. Even if she could have moved her arm to put the gun to her head and pull the trigger, it would have been virtually impossible for her to have lined up the muzzle of the gun with the first gunshot wound.

¶10.    Jones insists that Pam was suicidal because she was depressed about the death of her father and their inability to adopt a baby. However, several other witnesses testified that she was happy and was planning to host a party. Crediting the evidence and all reasonable inferences most favorable to the State, we find that the jury could reasonably exclude the hypothesis that Pam committed suicide. *See, e.g.,* **McDonald v. State**, 454 So. 2d 488, 493 (Miss. 1984).

¶11.    We find that a jury could conclude that Jones's defense of suicide did not constitute a reasonable hypothesis of innocence, *see id.* at 492, and that the circumstantial evidence used to convict Jones was sufficient to establish guilt beyond a reasonable doubt.

## II.     ALLEGED PROSECUTORIAL MISCONDUCT.

¶12.    In August of 1998, Jones began dating Kathleen Jameson. They moved in together in March of 1999, and during the trial in September of 2001, they were still together. At some point, Jones told Jameson that there were two bullets in Pam's head.

¶13.    The District Attorney's office did not learn that there were two bullets in Pam's head until March of 2000, when Steve Byrd faxed a report stating that there were fragments of two bullets in Pam's head. Steven Hayne, M.D., who had performed the autopsy in March of 1998, amended his report in April of 2000 to reflect this new evidence. Also, based on this new evidence, Jones was indicted for murder in April of 2000. During closing argument the State made the following comments:

> When his (Jones's) current girlfriend testified and I asked her what he had said to her, when he said it, and I asked her about the two bullets. And I asked when she knew about the two bullets. She said that in 1999. Ladies and gentlemen, I didn't know about the two bullets until March 17, 2000. But she did and the only way that she could have known was if he told her because nobody else knew at that point and time. March 17 is when we found out but she knew in 1999.

Jones contends that he was denied the right to a fair trial because of these comments, which, he says, amounted to testimony by the prosecution.

¶14.    Counsel is allowed considerable latitude in the argument of cases. *Simmons v. State*, 805 So. 2d 452, 492-93 (Miss. 2001); *Ivy v. State*, 589 So. 2d 1263, 1266 (Miss. 1991) (citing *Craft v. State*, 271 So. 2d 735, 737 (Miss. 1973)). The boundaries are well established, limiting counsel to the facts introduced in evidence, deductions and conclusions he may reasonably draw therefrom, and the application of the law to the facts. *Simmons*, 805 So. 2d at 493; *Ivy*, 589 So. 2d at 1266 (citing *Davis v. State*, 530 So. 2d 694, 701-02 (Miss. 1988)). Finally, the test for determining whether closing argument is so prejudicial that an objection should be sustained or a new trial granted is "whether the natural and probable effect of improper argument is to create unjust prejudice against the accused so as to result in a decision

5

influenced by prejudice." *Harvey v. State*, 666 So. 2d 798, 801 (Miss. 1995); *Johnson v. State*, 596 So. 2d 865, 869 (Miss. 1992).

¶15.    Because Jones did not contemporaneously object to the State's remarks, he is procedurally barred from raising this issue on appeal. However, addressing the merits of his claim, we find that the remarks were appropriate. The State was not "testifying," as Jones characterizes the remarks. Each one of the above statements was based on admitted evidence. Jameson, Byrd and Dr. Hayne all testified to these facts, and Byrd's report and the amended autopsy report were admitted into evidence. Furthermore, Jones has shown absolutely no prejudice flowing from these remarks. This claim is without merit.

### III.    WHETHER IT WAS ERROR TO ADMIT THE .22 CALIBER PISTOL INTO EVIDENCE.

¶16.    Jones complains that the firearm should not have been admitted into evidence because it was admitted during the testimony of Sheriff Cartlidge, who was a convicted felon. He argues that since Miss. Code Ann. § 97-37-5 (Rev. 2000) prohibits convicted felons from carrying firearms, "the effect of possessing and presenting the firearm as "Exhibit 2" . . . is plain error."

¶17.    Again, Jones failed to make a contemporaneous objection to the admission of the .22. He is therefore procedurally barred from raising this issue on appeal. However, addressing the merits of the claim, we find it to be frivolous. Sheriff Cartlidge was merely performing a ministerial duty by identifying the .22 during the trial. The .22 was taken from the crime scene on the day of Pam's death and had been in the custody of the Sheriff's Department since that day. Just because the Sheriff's Department had been in custody of the firearm does not mean that Sheriff Cartlidge had actual physical possession of it. In any event, section 97-37-5 is not a rule of evidence. This issue is without merit.

### IV.    WHETHER COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE.

¶18.    The standard for determining if a defendant received effective assistance of counsel is well settled. "The benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  A defendant must demonstrate that his counsel's performance was deficient and that the deficiency prejudiced the defense of the case.  *Id.* at 687. "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable."  *Stringer v. State*, 454 So. 2d 468, 477 (Miss. 1984) (citing *Strickland*, 466 U.S. at 687).  The focus of the inquiry must be whether counsel's assistance was reasonable considering all the circumstances.  *Id.*; *Burns v. State*, 813 So. 2d 668, 673 (Miss. 2001). We have further held that the "failure to present a case in mitigation during the sentencing phase of a capital trial is not, per se, ineffective assistance of counsel." *McGilberry v. State*, 843 So. 2d 21, 30 (Miss. 2003). *Williams v. State*, 722 So. 2d 447, 450 (Miss. 1998) (citing *Williams v. Cain*, 125 F.3d 269, 277 (5th Cir. 1997)).

### A.  Failure to Prosecute a Motion for Change of Venue

¶19.    Jones complains that trial counsel filed a motion for change of venue but neither attached any affidavits thereto nor requested a hearing thereon.  The motion was based on "the inflammatory nature of the case, the small population of the community of Rolling Fork and Sharkey County, Mississippi, and the pre-trial publicity . . . ."  As a result, "the Court was required to rule on the Motion based on responses from the jury pool qualified during the voir dire process at the beginning of the trial."  If a separate hearing had been held, "numerous witnesses could have been summoned to justify a change of venue."

¶20.    The circuit court denied the motion for change of venue after voir dire had taken place.  It stated:

> The Court, after sampling the vernary [sic] that was called was satisfied that there are sufficient jurors who do not know, and if they do or are aware of him, do under oath state to the Court that they could be fair and impartial to both the State and the Defense. Also the Court will note that there are 42 jurors of which 15 of those jurors are White, the remainder being Black. The population of Sharkey County is approximately 66 or 65 percent Black and 35 to 40 percent White and that works out [to] be about 38 percent of the jurors are White which is a good cross section that reflects the racial makeup of the county. The Court is satisfied that the jurors that are here can fairly try this case and the answers given to the court satisfied the Court that they could (1) do not have an intimate relationship with any of the parties concerned being the Defendant or the alleged victim in this case; and (2) that it is a fair cross section of the community in terms of demographics and therefore the Court will deny the Motion for Change of Venue.

Jones has not presented any evidence that the circuit court's ruling was erroneous. Therefore, as far as the motion for change of venue pertained to the small population of Sharkey County, Jones's claim of ineffective assistance of counsel is without merit.

¶21. The circuit court did not address pretrial publicity in its ruling. To determine whether a change in venue should have been granted an appellate court looks to the level of pretrial publicity and prejudicial nature of the coverage. *Holland v. State*, 705 So. 2d 307, 336 (Miss. 1997). *See also* *Hickson v. State*, 707 So. 2d 536, 542 (Miss. 1997); *Fisher v. State*, 481 So. 2d 203, 215 (Miss. 1985).

¶22. Jones presents no evidence of the alleged pretrial publicity; therefore, his claim must fail. *Davis v. State*, 743 So. 2d 326, 341 (Miss. 1999).

## B.  Failure to Object to Admission of .22 Revolver

¶23. Because Jones's objection to Sheriff Cartlidge's introduction of the .22 into evidence is without merit, his claim of ineffective assistance of counsel on this issue is likewise without merit.

## C.  Failure to Object to Improper Closing Argument

8

¶24.    Because Jones's objection to the State's remarks during closing argument is without merit, his claim of ineffective assistance of counsel on this issue is likewise without merit.

### D.  Failure to Submit Adequate Jury Instructions.

¶25.    Jones contends that "the instructions offered by defense counsel were inadequate and did not properly instruct the jury on his defense theory of suicide.  He cites the proposition that a defendant is entitled to have the jury properly instructed as to the defendant's theory of his defense so long as there is some reasonable credible evidence in the record to support it. *Gibson v. State*, 731 So. 2d 1087 (Miss. 1998); *Underwood v. State*, 708 So. 2d 18 (Miss. 1998); *Sayles v. State*, 552 So. 2d 1383 (Miss. 1989).

¶26.    The record shows that the jury was properly instructed that the State had the burden to prove every element of the crime beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence.  The instructions also charged the jury that they were to determine the credibility of the witnesses, and that unless the State met its burden of proof, they were to find Jones not guilty.

¶27.    The jury was further instructed that

> if there is a material fact or a material circumstance in this case susceptible to two interpretations, one favorable and the other unfavorable to David Allen Jones when the jury has considered such fact and circumstance with all the other evidence, if there is a reasonable doubt as to the correct interpretation you the jury must resolve such doubt in the favor of David Allen Jones and place upon such material fact or material circumstance the interpretation most favorable to him.

¶28.    As stated above, Jones's defense was that he did not shoot Pam, and he argues that the State did not prove that he shot Pam. This theory was adequately before the jury via the burden of proof instruction given, i.e., that the State must prove every element of murder beyond a reasonable doubt.  The jury was instructed that the State must prove that Jones murdered Pam to the exclusion of every other reasonable

9

hypothesis consistent with innocence, including suicide. The jury, by finding Jones guilty of murder, found that suicide was not a reasonable hypothesis.

¶29. Jones has not shown that the outcome of the trial would have been different if an instruction on his suicide theory had been given to the jury. The evidence allegedly supporting his theory was clearly before the jury, and it rejected that theory. There is no reasonable probability that a jury would have failed to convict Jones if a suicide instruction had been granted. *See, e.g., Ellis v. State*, 708 So. 2d 884, 887 (Miss. 1998). This claim is without merit.

### V. PRO SE ASSIGNMENT OF ERROR.

¶30. In his pro se brief, Jones adds an issue regarding the expert testimony of Kurt Kooyer, M. D., a local physician who specialized in pediatrics and internal medicine who was working in the emergency room with Pam was brought in. Dr. Kooyer was called by the State in rebuttal to Jones's expert witness, Dr. Sterling Meyer. He testified as to brain injuries, and Jones complains that neurological matters was beyond Dr. Kooyer's expertise. The circuit judge allowed Dr. Kooyer to testify, finding as follows:

> [H]e is testifying as to his experience in the medical fields and in emergency field and also as a treating physician of Ms. Jones, Pamela Jones. And I will let him give his opinion. It is not an opinion based upon neurology or some neurology training. But it is an opinion based on experience as an emergency room physician and also as a treating physician of Ms. Jones. So, I will let him give it. And I will let the jury put whatever weight they want to put on his opinion and Dr. Meyer's opinion and Dr. Haynes' opinion. The jury is the final determiner of how much weight they will put on the testimony.

¶31. "The admission of expert testimony is addressed to the sound discretion of the trial judge." *Coho Resources, Inc. v. McCarthy*, 829 So. 2d 1, 16 (Miss. 2002) (quoting *Roberts v. Grafe Auto Co.*, 701 So. 2d 1093, 1098 (Miss. 1997)). "Unless we conclude that the discretion was arbitrary and clearly

erroneous, amounting to an abuse of discretion, that decision will stand." *Coho Resources*, 829 So. 2d at 16 (quoting *Roberts*, 701 So. 2d at 1098).

¶32.    The circuit judge did not abuse his discretion, and the decision to allow Dr. Kooyer to testify was neither arbitrary nor clearly erroneous.  Dr. Kooyer treated Pam when she was brought to the emergency room.  He administered several tests, all of which indicated that Pam had suffered severe brain damage as a result of the gunshots.  Pam scored a "4" on the scale of the severity of comas, "3" being the most severe. He personally observed her motor function and brain activity.  This claim is without merit.

## CONCLUSION

¶33.    Finding no merit in Jones's assignments of error, we affirm Jones's conviction for murder and sentence of life imprisonment.

¶34.    **CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**

    **PITTMAN, C.J., McRAE AND SMITH, P.JJ., COBB, EASLEY, CARLSON AND GRAVES, JJ., CONCUR. DIAZ, J., NOT PARTICIPATING.**